JOHN KIRTSINGER, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion filed March 4, 1930.

H. *Gooding* and J. *Carl Lambdin,* attorneys for the Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, attorneys for the Defendant in Error.

BROWN, J.—Plaintiff in error was convicted under an indictment charging the breaking and entering of the dwelling house of G. W. Ryder, giving the street number, in St. Petersburg, Florida, with felonious intent, and stealing, taking and carrying away therefrom certain rugs of the value of $1600.00. There was no demurrer to the indictment.

The evidence showed that the dwelling house belonged to Ryder's wife, and that Ryder's name was G. L. Ryder instead of G. W., and hence it was claimed, that there was a fatal variance in both particulars.

As to the variance between the allegation of the indictment and the proof, in respect to the middle initial in the name of the alleged owner of the property burglarized, the record does not indicate that the defendant was in any wise embarrassed or misled thereby, and we do not regard it as a fatal variance in this case, (Burroughs v. State, 17 Fla., 643; 9 C. J. 1061, 31 C. J. 690, 849; 45 C. J. 370), nor one that, under the indictment and the facts of this case, was in any way prejudicial to the defendant. The indictment identified the house which was entered by street and number, and was sustained by the evidence. We think this sufficiently protects the defendant from a second prosecution for the same offense. Potter v. State, 109 So. R. 91; Addison v. State, 116 So. R. 629.

Nor do we regard the apparent variance as to the ownership of the dwelling a real one. True, it has been held that where a house is unoccupied, the ownership should be laid in the holder of the legal title, the real owner, as having the constructive possession. 9 C. J. 1044, citing Com. v. Reynolds, 122 Mass. 454. See also 9 C. J. 1048.

True also, it is, that this dwelling was unoccupied at the time of the entry. Mr. and Mrs. Ryder did not come down from the north until six days later. The general rule is that where a building is occupied, ownership may be laid in the actual occupant, unless he is a mere servant. Addison v. State, 95 Fla. 737, 116 So. R. 629. But at common law, the rule was that, as to a dwelling house and outhouses, the ownership should be laid in the husband, although the title was in the wife, where they were living together in the house; and the rule also applied to community property. 9 C. J. 1048, and cases cited. Under our statute, the property of the wife still remains in the "care and management" of the husband. Sec. 5867, Comp. Gen. Laws. And we have held in a replevin case, that this also means the "care and custody" of the husband. McNeil v. Williams, 64 Fla. 97, 59 So. R. 562, Thus, though this dwelling was not actually occupied at the time of the alleged breaking and entering, the constructive possession of the owner, the wife, and, therefore, of her husband, in view of his right to its care and custody, continued, during their absence from home, and we do not think any error was committed in alleging the ownership in the husband alone. Whether under our statutes as to married women's property, the indictment could just as well have laid the ownership in the wife, it is not necessary for us to determine on this record.

The difficult question in this case is whether or not the evidence shows any criminal intent on the part of this plaintiff in error. He was a young man of twenty-five working for a man named Morganstern, a dealer in second hand furniture. Mr. Ryder testified that when he and his wife came down from the north on November 8th they found that some valuable rugs had been taken from their dwelling; that a glass had evidently been removed from the side lights next the door, and then replaced. A truck

driver, who was indicted jointly with the plaintiff in error, and who had been doing some hauling for Morganstern and for defendant as his employer, testified for the prosecution, that the defendant, on the afternoon of November 2nd, asked him to take him out to this address, 1269 57th Ave., N., to get some rugs for Morganstern. That they drove up in front of the house, in broad day light, several men being at work across the street, and defendant walked up to the door, opened it, and came back out with several rolls of rugs wrapped in paper. They went by defendant's home and had supper, and then drove to Morganstern's home and there delivered the rugs to him. That on the way back up town defendant paid him $7.50, saying that Morganstern had given him $15.00. The defendant testified that he got the rugs as described, except that the front door was unlocked and partly open when he went in and found the rugs rolled up near the door on the inside. That he had merely carried out the instructions of his employer, who gave him a slip of paper with the house address on it, and told him to go there and get the rugs and take them to his, Morganstern's house, and that he, defendant, thought Morganstern had bought and paid for the rugs. That Morganstern paid him a salary of $15.00 per week. That about a week later he quit Morganstern and went to Saginaw, Mich., where his wife's people lived, and it was there he was arrested. It was shown also by the evidence that Morganstern was in the penitentiary at the time of the trial, but for what cause was not shown. This, however, may account for the failure of either side to put him on the stand. This is about the substance of all the legal evidence. It is earnestly contended that all the State's testimony might well have been true, and yet the defendant entirely innocent; that the State did not go far enough with its evidence to overcome the presumption of innocence and prove the defendant's guilt beyond a reasonable

doubt. That the burden was on the State to prove not only the breaking and entering, but also the felonious intent—the intent to steal, and this, too, beyond a reasonable doubt. That while the intent is not capable of direct proof, the State must prove circumstances from which such guilty intent may be fairly and reasonably inferred.

While the State's case was not a strong one, we would not be authorized to hold that the trial court was in error in allowing the verdict to stand. In the first place, there was testimony to show that the defendant entered this dwelling by *opening* the door and that he took and carried away personal property that belonged to the owner of the dwelling. There was also testimony from which the jury might have inferred that either Morganstern or the defendant had already visited this house and unlocked the door by removing the glass, and had rolled up and wrapped the rugs to be called for later, leaving the door unlocked. Then the question arises, why did they after getting the rugs, stop by defendant's home, or rather, his father's home, and wait until after supper to deliver the rugs to Morganstern, not at the latter's store, but at his home? And why did the defendant just before going by his father's home, go to the trouble to take the rugs out and leave them in a garage reached by a nearby alley, returning by and getting them after supper; why was he careful not to go to his father's with the rugs in the car? And why did the defendant voluntarily pay the driver of the car $7.50 after leaving Morganstern's, which was half the sum he said the latter had paid him? And why did the defendant, without any good reason shown by the evidence, quit Morganstern and go to Michigan a day or so after the Ryders had returned to their home?

In addition to these circumstances, the jury had an opportunity to observe the expression and demeanor of the

defendant on the witness stand, which may have had a significance which the record does not reveal. The verdicts of juries should not be lightly set aside. In view of the circumstances outlined, it can hardly be said that the jury were entirely without evidence from which a criminal intent could be reasonably inferred, and we would not be warranted in holding that the trial judge erred in denying the motion for new trial.

Affirmed.

TERRELL, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J., concur.

ELLIS, J., dissents.

ELLIS, J.—John Kirtsinger and James L. Ramsey were jointly indicted for breaking and entering a dwelling house, the property of G. W. Ryder, in Pinellas County, with intent to steal goods and chattels of the value of sixteen hundred dollars.

Kirtsinger pleaded not guilty and was convicted and sentenced to imprisonment in the State prison for a term of three years. He took a writ of error to the judgment.

The evidence showed that the dwelling house belonged to Mrs. G. L. Ryder, wife of G. L. Ryder. It was their house. They lived in it together. Mr. Ryder arrived in St. Petersburg about two o'clock Thursday, November 8, 1928, from the north and discovered that the house had been entered by removing a glass in the side light to the left of the door which was then opened and the glass replaced. Some thirteen rugs, ten of which were Oriental rugs valued at from $1600 to $2000 had been stolen.

The evidence shows that the defendant removed the rugs from the house. There is some evidence tending to

show that he was employed by a man named Morganstern, who was a dealer in second hand furniture. The defendant's duty was to clean up old furniture, deliver it and "go and get furniture for" his employer. His salary was fifteen dollars per week. That on November 2, 1928, the defendant's employer instructed the defendant to go to the house described in the indictment and get the rugs; that the defendant procured his friend Ramsey, who had an automobile, to go with him. They went in Ramsey's automobile to the house in the day time and the defendant went into the house, got the rugs, which were wrapped in newspaper, took them out to the automobile and returned with them to Morganstern.

Ramsey, who testified as a witness for the State, gave an account of the transaction slightly different. His statement was in substance that Kirtsinger said to him one afternoon that Morganstern had some rugs on Fifty-Seventh Avenue North which he wanted Kirtsinger to haul for him; that Kirtsinger and Ramsey went to the house rescribed in the indictment and Kirtsinger went into the house and got the rugs; that he opened the door, went into the house, and came out with the rugs. They carried them first to Kirtsinger's house, unloaded the rugs and put them in a garage. Ramsey drove the automobile to the front of the house, after unloading it, and then went into the house. Kirtsinger and his father ate supper. Kirtsinger then suggested that they run down town a "little bit." Ramsey agreed. The two went in the automobile through the alley, got the rugs out of the garage, and drove to Morganstern's house. Morganstern came out of the house in a few minutes and he and Kirtsinger took the rugs out of the car and "spread them on the porch." Kirtsinger, after spending a short time with Morganstern, came back to the automobile, gave Ramsey $7.50 saying Morganstern had given him

$15.00. They then returned to Kirtsinger's house where Kirtsinger got out of the automobile and went in and Ramsey went home.

It is contended by the plaintiff in error that the evidence is insufficient to support a conviction of breaking and entering with intent to commit larceny, first, because the ownership of the house entered was not proved as laid as it was shown that it was the property of Mrs. G. L. Ryder and not the property of G. W. Ryder; second, there was no evidence of a criminal intent on the part of Kirtsinger in entering the house as he was merely upon an errand for his employer, Morganstern.

The evidence of breaking was sufficient to establish that element of the offense even if the defendant merely opened or pushed open the door. See May v. State, 40 Fla. 426, 24 So. R. 498; Cooper v. State, 83 Fla. 34, 90 So. R. 693.

The value of the property taken was sufficiently established as well as the fact that it was taken by the defendant. The fact that the house was entered without the consent of the owner or occupant and that the rugs were taken away without his consent was also sufficiently established. Whether the explanation given by the defendant of his act in entering the house and removing the rugs was a reasonable and credible one was a question for the jury. Jackson v. State, 49 Fla. 3, 38 So. R. 599.

We find no difficulty in agreeing with the jury that the explanation was not reasonable although entirely credible. The defendant may have proceeded to the house, broken in and taken the rugs upon the instruction of his employer, and have been none the less guilty of the offense charged. The sophistry involved in the argument that the defendant is guiltless of wrong doing because he acted upon instructions from his employer is apparent. It is as much

a trespass to enter upon the enclosed premises of another upon instructions from a third person as to do so upon ones own initiative. There is no pretense that Morganstern owned the house, had the right of entry or the right to the possession of the rugs. Taking them in the day time in view of persons who could have seen the act may be evidence of audacity, impudence or assumption as well as assurance. It was for the jury to decide whether the act of the defendant was a mere pretense of assurance covering real uncertainty or whether it was an act of good faith.

The invasion of private property, the breaking open of a dwelling and the removal of personal property therefrom without the knowledge or consent of either the owner or occupant of the house or owner of the property removed and during his absence is a criminal invasion of property rights which the ignorant recklessness of any one little better than a moron will not excuse. The perpetrator of a crime may not be excused by the thin pretense of justification because the act is staged in a setting of recklessness and boldness.

Whether there was a variance between the allegation and proof in the matter of the name of the alleged owner of the dwelling is more serious. In Burroughs v. State, 17 Fla. 643, this Court held that an initial letter interposed between a Christian and surname is no part of the name; that the laws knows only of one Christian name. That was the common law rule. It is subject to some exceptions. While a variance in a middle name or initial was even in criminal cases deemed immaterial, see 45 C. J. 370, the use of initials merely is discountenanced as a means of identifying a person by name and it has been held that to be sufficient the initials before the surname must be correctly given. Carney v. Bigham, 51 Wash. 452, 99 Pac. R. 21, 19 L. R. A. (N. S.) 905.

The rule announced in that case was that at common law a legal name consisted of one given name and one surname and mistakes in a middle initial or middle name were not regarded as of consequence, but since the use of initials, instead of a given name, before a surname has become a common practice the necessity that these initials be all given and correctly given in court proceedings has become of importance in every case and in many absolutely essential to a correct designation of the person intended. In that case there was involved the validity of the foreclosure of· certain tax certificates upon land assessed to J. G. Carney instead of J. E. Carney, the owner, but neither the true owner of the property nor the person whose name appeared on the assessment rolls as the owner of the property was made a party defendant to the foreclosure proceedings. John E. Carney et al. brought an action to recover the land and quiet the title. There was a judgment in their favor which was affirmed. See also First Nat. Bank v. Hacoda Mercantile Co., 169 Ala. 476, 53 So. R. 802.

In the latter case Mr. Justice Evans, speaking for the court, said: ''When we come to the real truth of the matter, and cease to attempt to follow antiquated dogma, there is just as much diffference between the names of 'J. W. Dixon' and 'J. A. Dixon' as there is between the names of 'J. W. Dixon' and 'A. W. Dixon,' and this fact is recognized in the case of Martin v. State, 144 Ala. 8, 40 So. R. 275.''

In the case of Price v. State, 19 Ohio 423, the court held that in a criminal proceeding it is not necessary to insert the middle letter in a person's name but if inserted it must be proved as laid. Price was indicted for burglary and larceny in. breaking and entering the mill of Horace B. Westerhaven and stealing the goods of Horace B. Wester-

haven. The defendant pleaded a former acquittal. The record set forth in the plea showed a trial and acquittal of a charge of burglary in the mill of Horace E. Westerhaven and a larceny of goods of Horace E. Westerhaven. The plea also alleged that the Price acquitted is the same Price charged in the indictment and that Horace B. Westerhaven in whose house the burglary in the last indictment is alleged to have been committed is the same person who in the first indictment was named Horace E. Westerhaven and that the burglary and larceny charged in the first indictment was the same burglary and larceny charged in the second. Counsel for the State demurred to the plea. The demurrer was sustained and the Supreme Court of Ohio sustained the ruling.

To the same effect is State v. Hughes, 1 Swan's (Tenn.) 261.

This Court has held in many cases that under the statute denouncing buglarious entering the allegation of ownership of the building alleged to have been entered is material and must be proved as laid. See Smith v. State, 96 Fla. 30, 117 So. R. 377, and authorities cited in that case.

In Davis v. State, 51 Fla. 37, 40 So. R. 179, this Court said, speaking through Mr. Justice WHITFIELD : " 'The rule is well settled that the ownership of the building so burglariously entered must be alleged. The name of the owner of the * * * building which was broken and entered must be stated with accuracy.' " Citing Heard's Criminal Law, 436 ; 3 Ency. Pl. & Pr. 757.

The rule rests upon the method of identifying the offence by alleging the ownership of the thing on which it is committed. See 1 Bishop on Crim. Proc. Sec. 581.

It is not a question of title but a matter of identifying the property which has been injured. It is generally held

that the allegation of ownership is proved by evidence of occupancy but in any case the ownership or occupancy must be by the person named in the indictment whose possession was invaded by the accused.

In the case at bar no Christian name of the alleged owner was given. He was described by initials and the person who claimed to be the occupant was one whose initials were not the same as the person named in the indictment. It is clear that a person known as G. W. Ryder is a different person from the man known as G. L. Ryder and we have seen that an acquittal or conviction of a breaking in the house of G. W. Ryder would not avail the defendant by way of plea to another indictment charging the breaking and entering of a house owned by G. L. Ryder. The rule cuts both ways. So we think that as the name of the alleged owner must be certainly laid in the indictment, it must with equal certainty be proved as laid except where the owner is described by a full Christian and surname and not by initials and a surname.

We do not decide that if the indictment had laid the ownership of the house in G. L. Ryder and the evidence established that he occupied it with his wife who was the owner the variance would not have been material.