552 So.2d 206 (1989)
Alphonse KELLY, Appellant,
v.
STATE of Florida, Appellee.
No. 88-350.
District Court of Appeal of Florida, Fifth District.
July 13, 1989.
Rehearing Denied November 22, 1989.
*207 James B. Gibson, Public Defender, and James R. Wulchak, Chief Appellate Division, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
GOSHORN, Judge.
Kelly appeals his convictions for three counts of attempted murder,[1] three counts of shooting into an occupied vehicle,[2] one count of aggravated assault with a firearm,[3] and a final count of use of a firearm during the commission of a felony.[4] He raises numerous issues on appeal, several of which merit discussion.
The factual scenario began on the night of January 1, 1987, when Kelly attempted to confront his estranged girlfriend Frederica. Frederica and a co-worker, Dorothy, were parked in Dorothy's car in front of their place of employment, waiting for Frederica's brother. As it was a chilly night, the car's engine and heater were on. Neither woman recognized Kelly until he pulled up beside them and rolled down his window to speak with Frederica. Several times Kelly ordered Frederica out of the car; each time she refused. Kelly asked Frederica where she was going; Frederica responded that she was waiting for her brother to take her to her mother's house. After informing Frederica he would wait for her there, Kelly sped away.
Frederica then told Dorothy to leave if Kelly returned. Dorothy responded by putting the car in drive, resting her foot on the brake. Moments later Kelly returned, again pulling his car parallel with Dorothy's and demanding that Frederica get out of the car. When she refused, Kelly pointed a gun at Frederica. Dorothy accelerated the automobile and Kelly fired, shooting the front window out of Frederica's side.
After the first shot, Frederica hit the floorboard and remained there throughout the ensuing episode. Dorothy raced out of the parking lot and onto a busy highway. Kelly followed, firing again, shooting out a window on Dorothy's side. A half mile up the road, Dorothy observed a police car and made a U-turn. Kelly, also making a U-turn, fired yet another shot, this time into the rear driver's side window. This bullet also passed through the seat belt and headrest on Frederica's side. A bullet fragment hit Dorothy's finger, and a piece of lead, along with numerous shards of glass, were later recovered from Frederica's sweater. Kelly was subsequently arrested and initially charged with aggravated assault and shooting into a vehicle. He admitted "doing it" and said the police might as well charge him.

THREE COUNTS OF ATTEMPTED FIRST DEGREE MURDER
Kelly first contends that under Carawan,[5] he may not be convicted of three counts of attempted murder for what he characterizes as the single act of firing three shots into the car. Before any analysis proceeds under Carawan, there must first be an examination of the facts to determine whether the charges arise from a single offense or separate, independent acts. Such determination is to be made by the trier of fact on a case-by-case basis. The question to be asked in this instance is whether or not the three shots were sufficiently *208 segregated by time and location to conclude that Kelly formed a separate, independent intent for each attempted murder. While Kelly's contention may have merit under a different factual scenario, the shots were, in this instance, clearly individual acts separated not only in time, but by separate physical locations as well. The jury found that each shot was a discrete event, propelled by a separate, independent intent to commit a criminal act; therefore each will sustain a conviction.

THREE COUNTS OF SHOOTING INTO AN OCCUPIED VEHICLE
Kelly next asserts that even if he may be properly charged and convicted of three counts of attempted murder, these same three shots will not also sustain three convictions for shooting into an occupied vehicle. Kelly's reliance upon Carawan, supra, to support this proposition is, again, misplaced. First, we observe that Dion Michael Carawan was, in fact, convicted of attempted manslaughter, aggravated battery and shooting into an occupied structure. The supreme court concluded Carawan's convictions for both attempted manslaughter and aggravated battery were impermissible, since both offenses address essentially the same wrong and were predicated on a single act. Yet the Carawan court upheld the conviction for shooting into an occupied structure, thus approving it as a separate offense sustaining a separate penalty even though the act of firing the gun was common to all three offenses.

ONE COUNT OF AGGRAVATED ASSAULT
In Count VII, the state charged Kelly with an aggravated assault committed on Dorothy. Aggravated assault is a crime of intent. Where, as here, there is no proof of an intentional assault on the victim, that proof may be supplied by proof of conduct equivalent to culpable negligence, Green v. State, 315 So.2d 499 (Fla. 4th DCA 1975), or by proof of willful and reckless disregard for the safety of others. Dupree v. State, 310 So.2d 396 (Fla. 2d DCA 1975). The evidence is clear that Kelly knew Dorothy was in the car (she was driving), yet shot into her car not once, but three times. One shot passed through the window beside Dorothy. Dorothy was wounded by a bullet fragment and showered with glass. Kelly's actions toward Dorothy involved criminal conduct directed toward a victim separate and distinct from the victim of the attempted murders. This conviction is accordingly sustained.

ONE COUNT OF USE OF A FIREARM IN THE COMMISSION OF A FELONY
This charge is necessarily subsumed in each of the other seven convictions and is reversed. See Willingham v. State, 535 So.2d 718 (Fla. 5th DCA 1989); Crayton v. State, 536 So.2d 399 (Fla. 5th DCA 1989). See also Hall v. State, 517 So.2d 678 (Fla. 1988); Curry v. State, 539 So.2d 573 (Fla. 5th DCA 1989); Neal v. State, 527 So.2d 966 (Fla. 5th DCA 1988); Cardwell v. State, 525 So.2d 1025 (Fla. 5th DCA 1988); and Wright v. State, 519 So.2d 1157 (Fla. 5th DCA 1988).

SENTENCING
Kelly also appeals the imposition of four consecutive minimum mandatory sentences[6] for the three convictions for attempted murder and the conviction for aggravated assault. Consecutive, minimum mandatory sentences are properly assessed for offenses arising from independent incidents occurring at separate times and places. Palmer v. State, 438 So.2d 1 (Fla. 1983). Compare, State v. Ames, 467 So.2d 994 (Fla. 1985) (consecutive minimum mandatory sentences improper because the convictions fail to arise from separate incidents); Wilson v. State, 467 So.2d 996 (Fla. 1985) (kidnapping with a firearm and sexual battery with a firearm constitute a single, continuous episode; consecutive minimum mandatory sentences improper). Having previously determined that Kelly's three acts of attempted murder comprised separate, discrete acts, no error occurred in the trial court's imposition of the three *209 consecutive sentences for attempted murder. Likewise, the consecutive minimum mandatory sentence for the aggravated assault committed on Dorothy is proper because it constituted a separate, distinct event involving a separate and distinct victim. State v. Thomas, 487 So.2d 1043 (Fla. 1986).
Lastly, Kelly contends, and the state concedes, that the trial court erred by imposing a departure sentence of three consecutive life terms without providing written reasons for the departure. Rease v. State, 493 So.2d 454 (Fla. 1986); Kibler v. State, 501 So.2d 76 (Fla. 5th DCA 1987). Upon remand, the trial court must provide written reasons should it choose to impose a departure sentence. See e.g. Higgs v. State, 543 So.2d 427 (Fla. 5th DCA 1989); Mims v. State, 508 So.2d 1343, (Fla. 5th DCA 1987).
In summary, each of Kelly's convictions are affirmed except as to Count VIII for the use of a firearm in the commission of a felony. This cause is remanded for re-sentencing.
Affirmed in part; Reversed in part; Remanded.
ORFINGER and SHARP, JJ., concur.
NOTES
[1] § 777.04(1) and § 782.04(1)(a), Florida Statutes, 1987.
[2] § 790.19, Florida Statutes, 1987.
[3] § 784.021(1)(a), Florida Statutes, 1987.
[4] § 790.07(2), Florida Statutes, 1987.
[5] Carawan v. State, 515 So.2d 161 (Fla. 1987).
[6] § 775.087(2) Florida Statutes, 1987.