**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0857n.06

Case No. 13-2148

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Nov 14, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| ISRAEL GONZALES MENDEZ, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE and COOK, Circuit Judges; STEEH, District Judge[*]

COOK, Circuit Judge. A jury convicted Israel Gonzales Mendez of possession with intent to distribute 500 grams or more of cocaine, and the district court sentenced him to 360 months' imprisonment. Mendez raises an evidentiary and a sentencing challenge with this appeal. We AFFIRM.

I.

When a Michigan deputy sheriff found nearly $100,000 worth of cocaine during a traffic stop in late 2012, the vehicle's occupants agreed to cooperate with federal and state authorities to lure their source to Michigan to retrieve the drugs. As a result of arrangements by the

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

cooperators, Mendez came to Michigan and picked up the drugs, after which the police arrested him.

A grand jury indicted Mendez for possession with intent to distribute 500 grams or more of cocaine. As part of its trial preparation, the government sought a ruling on the admissibility of Mendez's prior drug convictions. The court barred as too remote evidence of Mendez's 1998 convictions, but it agreed to permit the government to introduce evidence of his 2004 marijuana-dealing conviction as relevant to proving both Mendez's intent-to-distribute and knowledge-of-possession. With that and other evidence, a jury found Mendez guilty.

The Probation Department then prepared a presentence report that classified Mendez as a career offender, counting his 2004 marijuana conviction and a previous felony-battery conviction as predicate offenses. That enhancement increased the sentencing guidelines range from 210–262 months to 360 months to life. Mendez objected, arguing that his prior felony-battery conviction did not qualify as a "crime of violence" under the guidelines and thus could not serve as a predicate to career-offender status. The court ruled that Mendez's battery conviction was categorically a crime of violence because it required the "use or attempted use or threatened use of physical force against another person," and imposed a 360-month sentence. This appeal followed.

## II.

Mendez argues that the district court erred by permitting the jury to hear evidence of his 2004 drug conviction. Though Rule 404(b) prohibits using prior convictions to show propensity, it allows their limited use to prove, among other things, the defendant's knowledge and intent. Mendez acknowledges his 2004 conviction but challenges the probative value of disclosing it to the jury deciding guilt in his cocaine trial given the two crimes' differing circumstances and the

significant lapse of time between them. *Compare United States v. Bell*, 516 F.3d 432, 443–44 (6th Cir. 2008) (requiring that evidence of prior distributions belong to the same scheme or plan or involve a similar *modus operandi*), *with United States v. Hardy*, 643 F.3d 143, 152 (6th Cir. 2011) (declining to follow *Bell* as contrary to circuit precedent), *and United States v. Matthews*, 440 F.3d 818, 830 (6th Cir. 2006) (affirming decision to admit evidence of eight-year-old distributions apparently unrelated to charged conduct).

We need not address this argument, however, because any error was harmless. As the government notes, Mendez's counsel conceded the issue of knowledge in closing arguments, contesting only Mendez's intent to distribute the drugs. And the record included ample evidence supporting the jury's verdict on that disputed point. Aside from the quantity and value of the cocaine found in Mendez's possession, the jury heard evidence of exchanges between the cooperators, their supplier, and Mendez showing that Mendez worked as a drug courier for the supplier. The jury also heard prison phone calls between Mendez and various family members in which he essentially confessed his guilt. In short, any error in admitting evidence of the 2004 conviction was harmless because "the properly admissible evidence of the defendant's guilt was overwhelming." *Hardy*, 643 F.3d at 153; *see also United States v. Finnell*, 276 F. App'x 450, 455 (6th Cir. 2008) (holding that decision to admit evidence of prior drug-trafficking conviction to show intent constituted harmless error in part because other evidence belied the defense theory of personal use).

### III.

Mendez argues that the district court erred in categorizing his felony-battery conviction as a crime of violence, thereby triggering the sentencing guideline's career-offender

enhancement. We review the court's crime-of-violence determination de novo. *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009).

As pertinent to this appeal, the guidelines define a "crime of violence" as any felony that "has as an element the use, attempted use or threatened use of physical force against the person of another . . . or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S. Sentencing Guidelines Manual § 4B1.2(a). In evaluating whether an offense constitutes a crime of violence, we look to the statutory definition of the crime and not the facts underlying the conviction. *United States v. Ford*, 560 F.3d 420, 422 (6th Cir. 2009) (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)).

Mendez admits that his previous conviction fell under the Class D felony-battery portion of the relevant Indiana statute criminalizing battery "result[ing] in bodily injury to . . . the other person." Ind. Code § 35-42-2-1(a)(2) (2004) (current version at Ind. Code § 35-42-2-1.3(b)(1)). He contends, however, that the statute's "bodily injury" requirement does not necessarily encompass "the use, attempted use or threatened use of physical force." U.S.S.G. § 4B1.2(a). We disagree.

The Supreme Court holds that "physical force," in the context of crimes of violence, means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Force that would result in mere offensive touching is not "violent force." *Id.* at 139 ("All of these definitions suggest a degree of power that would not be satisfied by the merest touching."). Although *Johnson* construed the Armed Career Criminal Act, this court recognizes that the ACCA's definition of "violent felony" closely resembles the guidelines' definition of "crime of violence." *See United States v. Sawyers*, 409 F.3d 732, 740 n.9 (6th Cir. 2005), *abrogated on other grounds by United States v.*

*Vanhook*, 640 F.3d 706 (6th Cir. 2011). Like the statute at issue in *Johnson*, the Indiana Class D felony-battery statute requires that a person actually "knowingly or intentionally *touch*[] another person." Ind. Code § 35-42-2-1(a) (emphasis added); *Johnson*, 559 U.S. at 135 (focusing on whether the portion of the Florida statute defining battery as "[a]ctually and intentionally *touch[ing]*" another person constitutes a "violent felony" under the Armed Career Criminal Act) (emphasis added). The statute thus falls squarely within *Johnson*'s definition of "physical" force. *Johnson*, 559 U.S. at 138.

Unlike the statute at issue in *Johnson*, the Indiana statute, when read as a whole, requires bodily contact "capable of causing physical pain or injury to another person" beyond mere offensive touching. *Id.* at 140. Another part of the Indiana statute defines bodily injury as "any impairment of physical condition, including physical pain." Ind. Code § 35-41-1-4. Although that definition does not specify that the degree of bodily injury must be greater than mere offensive touching, a comparison of the definition of a Class B misdemeanor and a Class A misdemeanor or Class D felony under the statute makes clear that the degree of bodily injury required must be greater than mere offensive touching. If a person only "knowingly or intentionally touches another person in a rude, insolent, or angry manner"—what would appear to be akin to mere offensive touching—the Indiana statute provides that the person has committed a "Class B misdemeanor." *Id.* § 35-42-2-1(a). A person commits a Class A misdemeanor if he or she "knowingly or intentionally touches another person in a rude, insolent, or angry manner . . . [and] it results in bodily injury." Ind. Code § 35-42-2-1(a)(1)(A). The Class D felony-battery provision applies if these same two elements are met and the person was previously convicted of committing a battery against the other person. Ind. Code § 35-42-2-1(a)(2)(D). Therefore, "bodily injury" must require something more than mere offensive

touching; otherwise, its inclusion as a basis upon which a Class B misdemeanor for only "rude, insolent, or angry" touching is elevated to a Class A misdemeanor or Class D felony with additional circumstances would make no sense.

Mendez nevertheless argues that a statute must require proof of *serious* bodily injury to qualify as a § 4B1.2 crime of violence, pointing to this court's decision in *United States v. Castleman*, 695 F.3d 582 (6th Cir. 2012) (holding that a "misdemeanor crime of domestic violence" under 18 U.S.C. § 922(g)(9) requires more than minor injury). But the Supreme Court reversed *Castleman*, thus negating its holding. *United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014) (concluding that a § 922(g)(9) predicate offense need not involve *any* bodily injury). More fundamentally, even the Sixth Circuit's now-reversed decision in *Castleman* does not help Mendez's argument because the statute at issue in that case encompassed conduct that could be construed as mere offensive touching. *United States v. Castleman*, 695 F.3d 582, 590 (6th Cir. 2012). But as previously discussed, the Indiana statute at issue in this case excludes such minor injury. Thus, even if the 2012 decision were still good law, Mendez's reliance on that case would be unavailing.

IV.

For these reasons, we AFFIRM.