RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0103p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARIO DELAINE,

*Defendant-Appellant*.

No. 25-5465

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:23-cr-00069-1—Charles Edward Atchley Jr., District Judge.

Argued: January 29, 2026

Decided and Filed: April 2, 2026

Before: GIBBONS, LARSEN, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Conrad Benjamin Kahn, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Conrad Benjamin Kahn, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

MURPHY, Circuit Judge. The Armed Career Criminal Act requires a court to impose a minimum sentence of 15 years' imprisonment for felons who possess firearms if they have three

prior "violent felony" convictions. 18 U.S.C. § 924(e)(1). The statute defines the phrase "violent felony" in part to include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* § 924(e)(2)(B)(i). The district court in this case held that this definition covered three of Mario Delaine's prior convictions and thus applied the 15-year minimum. Delaine has appealed. His appeal raises complex questions about the scope of the Armed Career Criminal Act. To name a few: When deciding whether a state-law offense qualifies as a "violent felony," must a sentencing court look only to the state-law precedent at the time of a defendant's conviction, or may it rely on later state-court decisions that clarify the offense's elements? And can an offense qualify as a violent felony if the defendant intentionally uses force against another person but does not intend for the force to cause an injury? Despite the excellent advocacy of Delaine's counsel, we disagree with him over the Act's requirements and the nature of his prior offenses. Because all three of those offenses are violent felonies, we affirm.

I

On November 5, 2022, a caller reported to the police that someone had discharged a weapon at a Motel 6 in Chattanooga, Tennessee. When the police arrived at the motel, they heard a suspect fire shots out the window of a motel room. As officers made their way to this room, the suspect fired another round through the door. The officers announced their presence and ordered everyone to exit. Delaine followed a woman out of the room. The woman gave the officers permission to search it. They uncovered a pistol and shell casings. They also located bullet holes in the window and door. Delaine confessed that he had fired the gun even though he could not lawfully possess a firearm as a convicted felon.

The government charged Delaine with one felon-in-possession count. *See* 18 U.S.C. § 922(g)(1). It also alleged that his prior convictions subjected him to a minimum sentence of 15 years' imprisonment under the Armed Career Criminal Act. *See id.* § 924(e)(1). The parties entered a plea deal under Federal Rule of Criminal Procedure 11(c)(1)(C). Delaine agreed to plead guilty to the sole count. The government agreed to a sentence of no more than 200 months' imprisonment. It also gave Delaine the right to appeal a decision that he qualified for the Armed Career Criminal Act's enhanced penalty.

At sentencing, the parties spent most of the time debating whether the Act's enhancement applied based on three of Delaine's prior convictions: a Florida aggravated-assault conviction from 2012; a Florida felony-battery conviction from 2009; and an Ohio domestic-violence conviction from 2019. The district court sided with the government and imposed the Act's enhancement. Ultimately, it sentenced Delaine to 188 months' imprisonment.

II

Delaine argues on appeal that the district court mistakenly applied the Armed Career Criminal Act's increased punishment. He is mistaken.

## A. General "Armed Career Criminal Act" Principles

When felons illegally possess firearms, the law generally subjects them to a maximum sentence of 15 years' imprisonment. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(8). But the Armed Career Criminal Act turns this maximum sentence into a minimum one for qualifying defendants. *See id.* § 924(e)(1). Under the Act, if a defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," a court must sentence the defendant to "not less than fifteen years" of imprisonment. *Id.*

This case turns on the Act's definition of "violent felony." *See id.* § 924(e)(2)(B). As relevant here, a prior conviction qualifies as a "violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* § 924(e)(2)(B)(i). The Supreme Court has interpreted this so-called "elements clause" (like similar clauses in other laws) to adopt a well-known "categorical approach." *Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality opinion); *see United States v. Taylor*, 596 U.S. 845, 850 (2022). That approach requires us to consider in the abstract whether every conviction for a given criminal offense would satisfy the elements clause because they would all necessarily include "the use, attempted use, or threatened use of physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i); *see Borden*, 593 U.S. at 424 (plurality opinion). In contrast, we do not consider the facts of a specific conviction or whether a defendant's specific conduct used, attempted, or threatened force. *Borden*, 593 U.S. at 424 (plurality opinion). In

other words, an offense *categorically* falls outside the Act whenever the "least culpable" conduct that the offense covers does not qualify. *Id.*

The Supreme Court has interpreted the elements clause to contain both a state-of-mind (mens rea) component and a conduct (actus reus) component. *See id.* at 429 (plurality opinion) (state of mind); *Johnson v. United States*, 559 U.S. 133, 138 (2010) (conduct); *see also* 5 St. George Tucker, *Blackstone's Commentaries* 21 (1803). Start with the conduct component. An offense can qualify if a defendant must "use," "attempt[]" to use, or "threaten[]" to use "physical force against the person of another" to commit it. 18 U.S.C. § 924(e)(2)(B)(i). The Court has defined this language's key phrase ("physical force") to cover only "*violent* force" that could "caus[e] physical pain or injury to another person." *Johnson*, 559 U.S. at 140. And it has applied this definition to two common-law crimes: battery and robbery. According to the Court, the force necessary to commit a common-law battery—"the slightest offensive touching"—does not satisfy this definition. *Id.* at 139. But the Court has added that the force necessary to commit a common-law robbery—the force required "to overcome the victim's resistance"—does satisfy it. *Stokeling v. United States*, 586 U.S. 73, 77 (2019). This force may qualify even if it results in only "minimal pain or injury." *Id.* at 84. Beyond all that, the force can also qualify even if the offender "cause[s] harm by omission"—that is, by failing to act when the offender has a duty to act (such as a parent starving a child to death). *Delligatti v. United States*, 604 U.S. 423, 433–34 (2025).

Turn to the state-of-mind component. The elements clause does not expressly identify any required state of mind. Yet the Supreme Court has found a state-of-mind component implied in the clause's text. The Court has held that this text excludes crimes "with a *mens rea* of recklessness" (or lower) from its reach. *Borden*, 593 U.S. at 445 (plurality opinion); *see id.* at 446 (Thomas, J., concurring in the judgment). So when a person intentionally deploys force (say, by driving a car) but acts recklessly or negligently about whether this force will hit a person (say, by accidentally striking a pedestrian), the person has not "use[d] . . . physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i); *see Borden*, 593 U.S. at 429, 432 (plurality opinion); *id.* at 446 (Thomas, J., concurring in the judgment); *Leocal v. Ashcroft*, 543 U.S. 1, 9–10 (2004).

In *Borden*, however, the Court splintered as to the rationale for this holding. A four-Justice plurality relied on two textual considerations. *See Borden*, 593 U.S. at 430–34 (plurality opinion). The plurality first explained that the phrase "use of physical force" required a "'volitional' or 'active' employment of force" (as compared to an involuntary muscle spasm). *Id.* at 430 (quoting *Voisine v. United States*, 579 U.S. 686, 693 (2016)). Relying on the Court's earlier decision in *Voisine*, the plurality believed that this phrase—by itself—could include recklessly harming others through such volitional acts. *See Borden*, 593 U.S. at 428–29, 442 (plurality opinion); *see also Voisine*, 579 U.S. at 693–94. But the plurality next explained that the phrase "against the person of another" (when modifying "use" of "physical force") conveyed that a victim must be "the conscious object" of the force. *Borden*, 593 U.S. at 430–32, 443 (plurality opinion). The plurality thus relied on this second phrase in the elements clause to exclude volitional motions that recklessly hit others. *See id.* By way of example, the plurality distinguished between a driver who knowingly drove "his car straight at a known victim" to escape the police and one who recklessly struck "a pedestrian whom he did not see" while running a red light. *Id.* at 432. According to the plurality, the first driver would have used force against the person of another in a way that the second driver would not have. *Id.*

Justice Thomas took a different path to the same result. He relied on the phrase "use of physical force" *alone* to conclude that negligent and reckless conduct fell outside the elements clause. *See id.* at 446 (Thomas, J., concurring in the judgment). In his view, this phrase had "a well-understood meaning applying only to intentional acts designed to cause harm." *Id.* (quoting *Voisine*, 579 U.S. at 713 (Thomas, J., dissenting)). As he said in his *Voisine* dissent, the phrase would not cover a party who recklessly deployed force—such as a man who texted while driving and got into an accident that injured a passenger. *See* 579 U.S. at 707 (Thomas, J., dissenting).

### B. Application

Delaine has an aggravated-assault conviction from Florida, a felony-battery conviction from Florida, and a domestic-violence conviction from Ohio. He argues that these convictions are not "violent felonies" because they cannot meet the state-of-mind or the conduct component of the elements clause. We will take the convictions in turn, reviewing de novo the district

court's decision that all three qualify. *See United States v. Campbell*, 122 F.4th 624, 628 (6th Cir. 2024).

### 1. Florida Aggravated Assault

We begin with Delaine's 2012 conviction for aggravated assault in Florida. Florida law relies on its "assault" statute to create its "aggravated assault" offense. That law first defines a regular assault as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). It then defines an "aggravated assault" as an ordinary assault that is either "[w]ith a deadly weapon without intent to kill" or "with an intent to commit a felony." *Id.* § 784.021(1)(a)–(b). The parties agree that this statute is "divisible" into two aggravated-assault offenses—one involving the use of a deadly weapon and the other involving the intent to commit another felony. *See Descamps v. United States*, 570 U.S. 254, 257 (2013). And they agree that Delaine committed the deadly weapon version.

Does this Florida offense satisfy the conduct and state-of-mind components to qualify as a violent felony under the elements clause? Our answer is an unambiguous yes. To start, Delaine does not dispute (and so we may assume) that the offense satisfies the conduct element because it requires a "threatened use" of the type of "*violent* force" that falls within the elements clause. 18 U.S.C. § 924(e)(2)(B)(i); *Johnson*, 559 U.S. at 140. Next, both text and precedent show that the offense meets the state-of-mind requirement because it demands more than a reckless threat. *See Borden*, 593 U.S. at 432 (plurality opinion). The offense's text requires a defendant to have "*intentional[ly]*" (not merely recklessly) directed a threat at another person. Fla. Stat. § 784.011(1) (emphasis added); *id.* § 784.021(1). And the Florida Supreme Court confirmed this reading when the Eleventh Circuit certified a question about this crime's intent element for purposes of the Armed Career Criminal Act. *See Somers v. United States*, 355 So. 3d 887, 891–92 (Fla. 2022). In *Somers,* the Florida Supreme Court held that the law requires "an intentional threat to do violence to another person." *Id.* at 891. As a result, aggravated assault is a violent felony.

Delaine responds by looking to the past.  He argues that a defendant could have been convicted for negligent or reckless threats of violence under this aggravated-assault statute when a court convicted him in 2012.  Yet Delaine does not rely on an older version of the statute that Florida's legislature has since amended.  The relevant statutory provision remains the same today as it was in 2012.  Rather, Delaine argues that some Florida cases had read the statute to encompass negligent or reckless threats before the Florida Supreme Court clarified things in *Somers*.  Because these courts allegedly allowed a jury to convict a defendant for negligent or reckless threats when Delaine committed aggravated assault, this reasoning goes, the crime did not satisfy the categorical approach at that time.  The Seventh Circuit has accepted this argument.  *See United States v. Anderson*, 99 F.4th 1106, 1111–12 (7th Cir. 2024).  Like the Eleventh Circuit, though, we must reject it.  *See Somers v. United States*, 66 F.4th 890, 895–96 (11th Cir. 2023).

At the outset, Delaine finds some support for his view in a pair of Supreme Court cases.  The Court has twice asked whether a prior conviction can qualify as a "violent felony" or "serious drug offense" if the statutory (or regulatory) law has changed in a way that renders the prior offense ineligible at the time of a defendant's *current felon-in-possession conviction*—even if it was eligible at the time of the defendant's *prior conviction*.  *See Brown v. United States*, 602 U.S. 101, 111 (2024); *McNeill v. United States*, 563 U.S. 816, 820 (2011).  For these types of statutory changes, the Court has held that a sentencing court must "examine the law as it was when the defendant violated it, even if that law is subsequently amended."  *Brown*, 602 U.S. at 111.

Further supporting Delaine's reading, some circuit courts have suggested that this same backward-looking framework applies when the judiciary departs from a prior interpretation of an unamended law after the defendant's prior conviction.  For example, some circuits have said that a sentencing court may not rely on a later-in-time state supreme court decision that departed from earlier lower-court decisions.  *See Anderson*, 99 F.4th at 1111–12; *United States v. Cornette*, 932 F.3d 204, 214–15 (4th Cir. 2019).  And other circuits have held that a sentencing court must look to the reading given by the state's highest court at the time of the defendant's conviction even if that court later overruled this reading.  *See United States*

*v. Vickers*, 967 F.3d 480, 486–87 (5th Cir. 2020), *vacated*, 141 S. Ct. 2783 (2021); *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1126–27 (8th Cir. 2013); *see also United States v. Faust*, 853 F.3d 39, 57–58 (1st Cir. 2017).

But these circuit cases may have overlooked an important factor: statutory amendments trigger different background interpretive rules than judicial decisions.  On the one hand, courts have long followed a "sacred" presumption that statutory amendments apply only prospectively to future conduct—not retroactively to prior conduct.  *Reynolds v. McArthur*, 27 U.S. 417, 434  (1829); *see Landgraf v. USI Film Prods.*, 511 U.S. 244, 265–69 (1994); *Soc'y for the Propagation of the Gospel v. Wheeler*, 22 F. Cas. 756, 769 (C.C.D.N.H. 1814) (Story, J.).  The Supreme Court's decisions in *Brown* and *McNeill* make good sense against this background rule.  The rule means that later amendments do not apply to a defendant's earlier conduct.  And a sentencing court should look to the law on the books at the time of that conduct (not a changed law) to decide whether the defendant committed a "violent felony" or "serious drug offense" under the Armed Career Criminal Act.

On the other hand, a different background rule has always applied to judicial decisions.  Courts presume that a decision interpreting a law "applies retroactively" because the decision reveals what the law *always* meant (both before and after the decision).  *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 56 (2015); *see Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311–13 & n.12 (1994); *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982).  As Blackstone explained, when a court changed its interpretation, it did not "make a new law, but . . . vindicate[d] the old one from" a prior "misrepresentation."  1 St. George Tucker, *supra*, at 69.  Because we assume that federal laws incorporate these types of background rules, *see Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991), one might think this competing rule should hold sway for judicial (in contrast to legislative) changes in the context of the Armed Career Criminal Act.

Does it matter, though, that the Florida courts limit the ability of criminal defendants to use new statutory interpretations to collaterally attack final criminal judgments?  *See Dettle v. State*, 395 So. 3d 1054, 1057 (Fla. 2024); *State v. Barnum*, 921 So. 2d 513, 528 (Fla. 2005); *cf. Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion).  The Seventh Circuit thought this

equitable limit on postconviction relief meant that a later judicial interpretation *changed* the statute. *See Anderson*, 99 F.4th at 1111–12. But just because the Florida courts refuse to grant collateral relief to defendants based on new judicial decisions does not mean that those decisions have the power to amend (rather than interpret) the law. *See Hester v. State*, 267 So. 3d 1084, 1086 (Fla. Dist. Ct. App. 2019). Besides, the inquiry that Delaine requests would seem to conflict with the Supreme Court's "categorical approach," which *categorically* treats a state offense as an eligible violent felony or an ineligible nonviolent one. *See Mathis v. United States*, 579 U.S. 500, 504–05 (2016). Under Delaine's view, by contrast, the same offense might constantly switch between these two categories depending on each new judicial decision. And what if different intermediate appellate courts adopt different readings (which are binding in their respective districts but not in others)? Should an offense's "violent felony" status turn on the district in which the defendant is convicted?

Further, while a rule disregarding later-in-time judicial decisions might help Delaine, it might "hurt" other defendants. *See Brown*, 602 U.S. at 122. Here, for example, suppose that Florida's state intermediate courts had all previously held that aggravated assault required intent (and so qualified as a violent felony), but the Florida Supreme Court later held that a reckless threat could suffice (which would disqualify the crime from violent-felony treatment). Under Delaine's rule, we might have to treat aggravated assault as a violent felony for the many defendants convicted before the state supreme court's clarifying interpretation even though that interpretation revealed what the law had "always meant." *Hester*, 267 So. 3d at 1086. Given that Delaine's reading may well harm as many defendants as it helps, the rule of lenity likely provides no aid in deciding this issue. *Brown*, 602 U.S. at 123; *cf. Vickers*, 967 F.3d at 486.

Ultimately, though, we need not enter this debate to decide this case. Even if we must ignore changes in judicial interpretation that postdate a defendant's prior conviction, the Florida Supreme Court did not change Florida law in *Somers*. Before Delaine's 2012 conviction, every Florida appellate court described assault or aggravated assault as requiring intent. *See Bartley v. State*, 689 So. 2d 372, 373 (Fla. Dist. Ct. App. 1997) (First District) (per curiam); *Pinkney v. State*, 74 So. 3d 572, 576 (Fla. Dist. Ct. App. 2011) (en banc) (Second District); *Lavin v. State*, 754 So. 2d 784, 787 (Fla. Dist. Ct. App. 2000) (Third District); *Benitez v. State*, 901 So. 2d 935,

937 (Fla. Dist. Ct. App. 2005) (Fourth District); *Cambell v. State*, 37 So. 3d 948, 950 (Fla. Dist. Ct. App. 2010) (Fifth District). Some courts treated aggravated assault as "a specific intent crime." *Bartley*, 689 So. 2d at 373. Another court incorporated common-law rules that defined intent to include a volitional statement or action that the defendant knew was "substantially certain" to be taken as a threat by the victim. *Pinkney*, 74 So. 3d at 576. That court thus defined "intent" to require what the Supreme Court would describe as a knowing state of mind. *See Borden*, 593 U.S. at 426 (plurality opinion) (citation omitted); *Voisine*, 579 U.S. at 704–05 (Thomas, J., dissenting) (citing Restatement (Second) of Torts § 8A cmt. b (Am. L. Inst. 1965)). Further, all these courts would not hesitate to grant judgment as a matter of law to defendants when the prosecution failed to present enough evidence that the defendants intended to convey a threat. *See Denard v. State*, 30 So. 3d 595, 596 (Fla. Dist. Ct. App. 2010); *Swift v. State*, 973 So. 2d 1196, 1199 (Fla. Dist. Ct. App. 2008); *Benitez*, 901 So. 2d at 937; *Turner v. State*, 771 So. 2d 1286, 1286 (Fla. Dist. Ct. App. 2000) (per curiam); *see also Dobosh v. State*, 684 So. 2d 276, 277 (Fla. Dist. Ct. App. 1996).

Since 1981, Florida's standard jury instructions have likewise required an intentional threat. *See In re Standard Jury Instructions in Crim. Cases*, 131 So. 3d 755, 758–59 (Fla. 2013) (per curiam). Near the time of Delaine's conviction, the instructions provided that the prosecution must prove that a defendant "*intentionally* and unlawfully threatened, either by word or act, to do violence to" a victim. *Id.* at 758 (emphasis added). And notably, the Florida Supreme Court approved these instructions and has long presumed that they accurately reflect Florida law. *See id.* at 755; *Stephens v. State*, 787 So. 2d 747, 755 (Fla. 2001) (per curiam).

To reach the contrary claim, Delaine relies on two cases from Florida's Fifth District Court of Appeals: *Kelly v. State*, 552 So. 2d 206 (Fla. Dist. Ct. App. 1989), and *LaValley v. State*, 633 So. 2d 1126 (Fla. Dist. Ct. App. 1994). The Seventh Circuit read these cases as holding that "assault could be committed recklessly[.]" *Anderson*, 99 F.4th at 1110. But the analysis in the opinions does not support that broadbrush conclusion.

Start with *Kelly*. There, the defendant confronted his "estranged girlfriend" (Frederica) while she and her friend (Dorothy) were sitting in Dorothy's car. *Kelly*, 552 So. 2d at 207. Frederica refused the defendant's demands to get out of the car, so he pointed a gun at her. *Id.*

As Dorothy sped away, the defendant shot a round into the windshield. *Id.* A wild chase (with two more gunshots) ensued. *Id.* "A bullet fragment hit Dorothy's finger," and lead and glass shards landed on Frederica's sweater. *Id.* The prosecution charged the defendant with (among other things) aggravated assault of Dorothy. *Id.* at 208. In a brief paragraph, the court upheld this conviction. *Id.* It recognized that aggravated assault required "intent." *Id.* But it saw no direct "proof" that the defendant intended to threaten Dorothy. *Id.* Still, it said that the required "proof" of intent "may be supplied by proof of conduct equivalent to culpable negligence" or "willful and reckless disregard for the safety of others." *Id.* *Kelly* thus held that a reasonable jury could find that the defendant intended to threaten the victim based on his dangerous conduct toward her. *Cf. Kirtsinger v. State*, 126 So. 767, 768–69 (Fla. 1930). In other words, *Kelly*'s statements about recklessness and negligence concerned *the evidence that suffices* for a jury to find intent. The statements did not construe *the elements of aggravated assault*. The decision thus does not support Delaine's view that the court interpreted aggravated assault to reach unintentional threats.

Turn to *LaValley*. The victim there got into an argument with the defendant's brother. *See LaValley*, 633 So. 2d at 1127. The victim headed home, but the defendant and her brother gave chase in her car. *See id.* Her vehicle "came within one foot" of the victim, and she drove onto his yard. *See id.* The prosecution charged the defendant with aggravated assault. *See id.* But the jury found her guilty of a lesser-included offense: reckless driving. *See id.* The court affirmed. *Id.* at 1228. It reasoned that "a charge that one committed an aggravated assault by intentionally driving her vehicle in a threatening manner subsumes the elements of reckless driving." *Id.* at 1227. The court thus expressly recognized that aggravated assault required intent to threaten and held that a crime with a lower mental state (reckless driving) could qualify as a lesser-included offense. Other Florida decisions have thus read *LaValley* as merely articulating rules about lesser-included offenses. *See Anderson v. State*, 291 So. 3d 531, 536 (Fla. 2020). Delaine cites no case that reads *LaValley* to suggest that aggravated assault *itself* requires only a reckless state of mind.

Later decisions from the Fifth District Court of Appeals leave no doubt that Delaine (and the Seventh Circuit) misread *Kelly* and *LaValley*. Two years after *LaValley*, the court treated

aggravated assault as "a specific intent crime" and so reversed a conviction because the trial court refused to allow the defendant to make a "voluntary intoxication" defense to this crime. *Dobosh*, 684 So. 2d at 277. Two years before Delaine's conviction, the court reversed an aggravated-assault conviction because the prosecution introduced insufficient evidence that the defendant "had the specific intent to threaten" a victim hiding under a truck during a robbery. *Denard*, 30 So. 3d at 596. And four months after that decision, the court clarified again that the assault statute "inherent[ly]" required the "intention to make a threat to do violence." *Cambell*, 37 So. 3d at 950.

All told, we see no "realistic probability" that a Florida court would have read the aggravated-assault statute to reach reckless or negligent threats at the time of Delaine's conviction. *United States v. Cervenak*, 135 F.4th 311, 326 (6th Cir. 2025) (en banc) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). The "text of the state statute" required an intentional threat. *Id.* And many state decisions confirmed this unambiguous meaning.

One last point. In *Borden*, the plurality opinion held that the phrase the "use of physical force against the person of another" excluded crimes involving the reckless use of force. 593 U.S. at 429 (plurality opinion). Technically, Delaine's aggravated-assault offense involves a different part of the elements clause—namely, the part that covers the "*threatened* use of physical force against the person of another[.]" 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added). And the Supreme Court has suggested that a different "threats" statute (one that prohibits a "threat to injure the person of another," *id.* § 875(c)) might be best read to include defendants who are *reckless* about whether their victims will interpret their statements as threats. *See Elonis v. United States*, 575 U.S. 723, 741–42 (2015); *see also id.* at 744–46 (Alito, J., concurring in part and dissenting in part); *United States v. Sheikh*, 164 F.4th 629, 634 (7th Cir. 2026). Might this same reading apply to the language "threatened use of force" in the elements clause? Because the parties have not briefed this question, we can leave it for another day.

2. Florida Felony Battery

We next turn to Delaine's Florida conviction for felony battery from 2009. This offense has two elements. The defendant must "[a]ctually and intentionally touch[] or strike[] another

person against the will of the other[.]" Fla. Stat. § 784.041(1)(a). And that contact must "[c]ause[] great bodily harm, permanent disability, or permanent disfigurement." *Id.* § 784.041(1)(b).

This Florida offense also satisfies the conduct and state-of-mind components of the elements clause. Starting with the conduct component, the offense always involves "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. To be sure, the Supreme Court has held that the force required for common-law battery does not suffice because it can include "even the slightest offensive touching." *Id.* at 139. And the Florida offense here is a battery offense. But a key difference exists between this Florida offense and the common-law version. The Florida offense requires "great bodily harm, permanent disability, or permanent disfigurement" in every case. Fla. Stat. § 784.041(1)(b). The common-law offense does not. This fact makes all the difference. Indeed, the Court has since held that "any force that actually causes injury" qualifies as violent force. *Delligatti*, 604 U.S. at 432. Or, as Justice Scalia put it, "it is impossible to cause bodily injury without using force 'capable of' producing that result." *United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J., concurring in the judgment) (quoting *Johnson*, 559 U.S. at 140); *see Stokeling*, 586 U.S. at 84–85.

Turning to the state-of-mind element, Florida's offense always requires "purposeful" or at least "knowing" uses of force, so it does not include the reckless conduct that falls outside the elements clause. *See Borden*, 593 U.S. at 432 (plurality opinion). In particular, the text requires the defendant to "*intentionally* touch[] or strike[]" the victim. Fla. Stat. § 784.041(1)(a) (emphasis added). And Florida caselaw confirms that the defendant must, in fact, intend this touch or strike. *See Jefferies v. State*, 849 So. 2d 401, 404 (Fla. Dist. Ct. App. 2003). Some cases again suggest that the required "intent" can exist if defendants know that their acts make it "substantially certain" that a touch or strike will occur. *See C.B. v. State*, 810 So. 2d 1072, 1073 (Fla. Dist. Ct. App. 2002). Either way, though, the statute has more than "a *mens rea* of recklessness" and thus counts as a violent felony under the elements clause. *See Borden*, 593 U.S. at 445 (plurality opinion).

In response, Delaine points out that while this Florida offense requires a defendant to intentionally *use force*; it does not require the defendant to intentionally *cause injury*. *See*

*Jefferies*, 849 So. 2d at 404. Put another way, so long as a defendant intentionally touches a victim, even an accidental injury that this force produces could fall within the statute. *See id.* And Delaine reads *Borden* as requiring a defendant to intend (or at least know) that harm will result from the force.

This argument finds no support in either the *Borden* plurality opinion or Justice Thomas's concurrence in the judgment. To begin, Delaine mistakes a mere example in the plurality opinion for a holding that the elements clause requires a defendant to knowingly cause an injury. In a "background" part of its opinion (Part II), the plurality summarized the differences between four states of mind: "purpose, knowledge, recklessness, and negligence." *Borden*, 593 U.S. at 425–26 (plurality opinion). It said that a person acts knowingly if "he is aware that [a] result is practically certain to follow from his conduct[.]" *Id.* at 426 (citation omitted). The plurality then gave an example of what this state of mind requires, explaining that "[a] person who *injures* another knowingly" makes "a deliberate choice with full awareness of consequent harm." *Id.* (emphasis added). Yet the plurality used this example only to differentiate a knowing mindset from a reckless one. It did not use the example when interpreting the elements clause.

The plurality's interpretation of that clause instead came in the next part of its opinion (Part III). *Id.* at 429–34. There, the plurality held that the clause's (implied) state-of-mind element concerned the *use of force*, not the *resulting harm*. The plurality first explained that the phrase "use of physical force" required "volitional" force. *Id.* at 430 (quoting *Voisine*, 579 U.S. at 693). It then explained that the phrase "against the person of another" required the victim to be the "conscious object" of this force. *Id.* Putting the two together, it decided that a defendant must "consciously deploy[]" force against the other person. *Id.* at 432. Nowhere did the opinion suggest that the defendant must also intend (or know of) the injury that this force causes. Nor would such a reading fit the statutory text. The text says that the defendant must use "physical force against the person of another"; it does not say the defendant must "knowingly injure another."

Delaine's position fares no better under Justice Thomas's concurrence. True, Justice Thomas suggested that the phrase "use of physical force" alone had "a well-understood meaning applying only to intentional acts *designed to cause harm*." *Id.* at 446 (Thomas, J., concurring in

the judgment) (emphasis added) (quoting *Voisine*, 579 U.S. at 713 (Thomas, J., dissenting)). And one might read this sentence to suggest that Justice Thomas believes that a defendant must intend to harm the victim. But things are not so simple. After all, Justice Thomas joined Justice Alito's dissent in *Johnson*, so he believes that even common-law battery includes enough intentional force to fall within the elements clause. *See Johnson*, 559 U.S. at 145–47 (Alito, J., dissenting). He also adhered to that view in *Castleman*. 572 U.S. at 183–84 (Alito, J., concurring in the judgment). And he adhered to the view in *Voisine*, reconciling his position by explaining that the *harm* that he believes a defendant must intend includes any "nonconsensual touching." 579 U.S. at 701 n.1 (Thomas, J., dissenting). Because Justice Thomas would hold that the intent required for common-law battery makes that crime a "violent felony," he would undoubtedly hold that Florida's felony battery (an enhanced version of the common-law crime) also qualifies.

Still, his concurrence raises a question that matters here: Which *Borden* opinion—if any—controls on the state-of-mind question that Delaine has raised? Is it Justice Kagan's plurality opinion for four Justices? Or Justice Thomas's concurrence? Or is it neither opinion, such that we may decide Delaine's question from first principles rather than precedent? The Supreme Court has yet to decide this so-called "*Marks*" question (named after *Marks v. United States*, 430 U.S. 188 (1977)). *See Delligatti*, 604 U.S. at 434 n.5. And judges have disagreed over it.

The disagreement arises from the "vexing task" of deciding which, if any, opinion controls when the Supreme Court does not issue a single majority opinion. *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 431 (6th Cir. 2020) (citation omitted), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Under *Marks*, the writing that agrees with the ultimate judgment "on the narrowest grounds" represents the controlling one. 430 U.S. at 193 (citation omitted). We have indicated that whether one opinion is narrower than another turns on the "results" or "outcomes" that the logic of both opinions will produce in later cases. *EMW*, 978 F.3d at 431 (citation omitted); *United States v. Kratt*, 579 F.3d 558, 562 (6th Cir. 2009). An opinion qualifies as the narrowest if it would reach the same result as the fractured judgment in "a logical subset" of all future cases

where another non-majority opinion would reach that result. *Kratt*, 579 F.3d at 562 (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc)); *see EMW*, 978 F.3d at 431. When no opinion can meet this test (because each reaches results different from the fractured judgment under different sets of circumstances), "[t]he *Marks* rule is not workable" and the reasoning in none of the opinions binds us. *United States v. Ray*, 803 F.3d 244, 270–72 (6th Cir. 2015).

How do these rules play out here? The relevant "result[]" of *Borden*'s fractured judgment was a finding that the state-law offense at issue did not qualify as a violent felony. *EMW*, 978 F.3d at 431 (citation omitted). And the plurality found that a statute would satisfy the elements clause if it at least included intentional or knowing states of mind, *see* 593 U.S. at 432 (plurality opinion), whereas Justice Thomas would cover only a statute that required "intentional acts designed to cause harm," *id.* at 446 (Thomas, J., concurring in the judgment). So some judges have treated the *Borden* plurality opinion as logically "narrower" than Justice Thomas's concurrence because the plurality would reach *Borden*'s result (a finding that a crime is not a violent felony) in a logical subset of the cases in which Justice Thomas would reach that result. *United States v. Gomez*, 165 F.4th 1199, 1208 (9th Cir. 2026) (en banc) (citation omitted); *see United States v. Kepler*, 74 F.4th 1292, 1302 n.11 (10th Cir. 2023). These courts thus view the plurality opinion's reasoning as binding. *See Gomez*, 165 F.4th at 1208.

But again, Justice Thomas (who disagreed with *Johnson*) seemingly had a more lenient understanding of "harm" and "force" than did the plurality (which accepted *Johnson*). *See Voisine*, 579 U.S. at 701 n.1 (Thomas, J., dissenting). So some other judges have held that the reasoning in neither *Borden* opinion covers a logical subset of the other and thus that *Borden* itself establishes only a narrow holding: "that the elements clause excludes reckless conduct." *Somers*, 66 F.4th at 895; *see Gomez*, 165 F.4th at 1214 (Collins, J., concurring in the judgment). These judges thus do not view either opinion as binding on questions that involve more demanding states of mind than recklessness. *See Gomez*, 165 F.4th at 1214 (Collins, J., concurring in the judgment).

We need not pick sides in this *Marks* debate because we hold that Florida felony battery qualifies as a violent felony under either view of *Borden*'s precedential effect. If the reasoning

of the *Borden* plurality opinion controls, we have already explained that it supports our conclusion.  The plurality required only that a defendant intentionally or knowingly use force against a victim—not that the defendant intend or know that this force will cause an injury.  *See Borden*, 593 U.S. at 430–32 (plurality opinion).  And if the reasoning of neither opinion controls, we would follow the decisions of the Seventh and Eleventh Circuits that have already answered the question.  *See United States v. Vail-Bailon*, 868 F.3d 1293, 1299–1308 (11th Cir. 2017); *Douglas v. United States*, 858 F.3d 1069, 1071–72 (7th Cir. 2017); *see also United States v. Mendez*, 593 F. App'x 441, 443–44 (6th Cir. 2014).  The plain text of the elements clause requires only an intent or knowledge with respect to the force.  We do not see how it can be read to require "a *separate* intent element attached to the degree of injury."  *Douglas*, 858 F.3d at 1072.

Delaine claims that this conclusion conflicts with the Ninth Circuit's decision in *Gomez*.  There, the en banc court held that a California conviction for assault with a deadly weapon did not meet the *Borden* plurality's reasoning.  *Gomez*, 165 F.4th at 1208–10.  Critically, though, the court read the California crime not to "require an intent to apply force, knowledge that an action will cause force to be applied to another, or even subjective awareness of a risk that such force will result."  *Id.* at 1208.  In other words, a defendant need not use intentional or knowing *force* (without regard to whether that force would cause *injury*).  *Gomez* thus adheres to our view, which likewise requires the use of force to satisfy the applicable state-of-mind requirement.

Admittedly, another unpublished decision from the Ninth Circuit suggested that the *Borden* plurality required "an awareness of consequent harm[.]"  *United States v. Vega*, 2023 WL 4858148, at *1 n.2 (9th Cir. July 31, 2023) (mem.).  But *Vega* makes the same mistake that Delaine commits.  The decision treated the explanatory analysis in the plurality opinion's background section as a holding about what the statute's state-of-mind requirement modifies: the injury.  *Id.*  Yet that state-of-mind requirement instead modifies the force component in the elements clause.  And Florida felony battery requires an intentional use of force.  As a result, that state-law offense qualifies as a violent felony under the elements clause.

3. Ohio Domestic Violence

We lastly reach Delaine's Ohio conviction for domestic violence from 2019.  The Ohio domestic-violence statute makes it a crime for a person to "knowingly cause or attempt to cause physical harm to a family or household member."  Ohio Rev. Code § 2919.25(A).  Ohio law defines "[p]hysical harm to persons" to cover "any injury, illness, or other physiological impairment, regardless of its gravity or duration."  *Id.* § 2901.01(A)(3).  And it treats a domestic-violence conviction as a misdemeanor unless a defendant has a prior domestic-violence conviction, in which case the offense becomes a felony.  *Id.* § 2919.25(D)(2)–(4).  Because Delaine had a prior conviction, he pleaded guilty to the felony version.

This Ohio domestic-violence offense also meets the state-of-mind and conduct elements to qualify as a "violent felony" under the Armed Career Criminal Act.  To start, Delaine does not challenge the state-of-mind element because the crime applies only if a defendant "knowingly" harms, or tries to harm, a victim.  *Id.* § 2919.25(A); *see Borden*, 593 U.S. at 432 (plurality opinion).  Next, we have already held that the offense satisfies the conduct element.  *See United States v. Gatson*, 776 F.3d 405, 411 (6th Cir. 2015).  As *Gatson* explained, the force that the Ohio law requires—force that causes an "injury, illness, or other physiological impairment," Ohio Rev. Code § 2901.01(A)(3)—is (almost "by definition") "force 'capable of causing physical injury or pain to another person.'"  *Gatson*, 776 F.3d at 411 (quoting *Johnson*, 559 U.S. at 140).  So our cases have repeatedly treated *Gatson* as binding on whether an Ohio domestic-violence conviction is a violent felony.  *See United States v. Alexander*, 2023 WL 2682373, at *3 (6th Cir. Mar. 29, 2023); *United States v. Mitchell*, 2022 WL 12230276, at *3 (6th Cir. Oct. 21, 2022); *United States v. Marshall*, 2022 WL 11710803, at *1 (6th Cir. Oct. 20, 2022); *United States v. Mickel*, 2022 WL 1100459, at *2 (6th Cir. Apr. 13, 2022); *United States v. Melendez-Perez*, 2021 WL 3045781, at *2–3 (6th Cir. July 20, 2021); *United States v. Solomon*, 763 F. App'x 442, 445 (6th Cir. 2019).

Delaine disagrees for two reasons.  *Reason One*: He first argues that *Gatson*'s holding did not survive *United States v. Taylor*, 596 U.S. 845 (2022).  He is correct that we could reevaluate *Gatson* if a later Supreme Court decision called it into doubt.  *See United States v. Fields*, 53 F.4th 1027, 1046–47 (6th Cir. 2022).  But *Taylor* did no such thing.  There, the Supreme

Court held that attempted Hobbs Act robbery did not satisfy a similarly worded elements clause in another statute. *See Taylor*, 596 U.S. at 850–60. Yet a defendant may complete a Hobbs Act robbery through "actual or *threatened* force," so the defendant need not use force in every case. 18 U.S.C. § 1951(b)(1) (emphasis added). Defendants who attempt a Hobbs Act robbery thus need not "attempt[]" the "use" of force because they could commit that crime by attempting to *threaten* force instead. *Id.* § 924(e)(2)(B)(i); *see Taylor*, 596 U.S. at 851–52.

According to Delaine, Ohio's domestic-violence offense suffers from the same problem. He claims that this offense does not qualify as a violent felony because a defendant can commit it through an "*attempt* to cause" an injury to a qualifying person. Ohio Rev. Code § 2919.25(A) (emphasis added). But he overlooks a key distinction between this case and *Taylor*. An Ohio domestic-violence offense will always include the *use* of force that causes the "physical harm" that the offense requires. *Id.* Unlike Hobbs Act robbery, then, the Ohio statute does not include *threatened* force as an alternative way to commit the crime. *See id.* So someone who attempts this offense will always have "attempted" the "use" of force under the elements clause. 18 U.S.C. § 924(e)(2)(B)(i). And our court and many other courts have refused to expand *Taylor*'s logic to cover offenses (in particular, attempted murder) whose completed crime always entails the use of force. *See United States v. Parham*, 119 F.4th 488, 495 (6th Cir. 2024); *United States v. Martin*, 2023 WL 2755656, at *7 (6th Cir. Apr. 3, 2023); *see also United States v. Smith*, 165 F.4th 751, 757–62 (3d Cir. 2026); *United States v. Lassiter*, 96 F.4th 629, 637–39 (4th Cir. 2024); *United States v. Pastore*, 83 F.4th 113, 120–21 (2d Cir. 2023). The logic of this attempted-murder precedent applies to Delaine's domestic-violence conviction.

Delaine responds that the elements clause uses the word "attempted" in its ordinary sense (e.g., the party "[t]ried" to use force), not its specialized legal sense (e.g., the party "intended" to use force and took a "substantial step" to that result). Appellant's Br. 44; I Oxford English Dictionary 764 (2d ed. 1989); *Taylor*, 596 U.S. at 851 (citation omitted). He also gives a hypothetical: a husband who buys a weapon and drives home to harm his wife has attempted domestic violence under Ohio law even if the police stop him on his way there. Appellant's Br. 45. But according to Delaine, this husband has not "attempted" the "use" of force under the ordinary understanding of "attempted." *See id.* We disagree. For starters, some courts have

read the elements clause to adopt the legal meaning of "attempted" (not the ordinary one on which Delaine relies). *See Lassiter*, 96 F.4th at 638. Regardless, we need not choose between the two here. A reasonable speaker would believe that the husband in Delaine's hypothetical *tried* to use force. An "attempted use" of force need not involve only a swing and a miss. One would naturally say that a person tried to use force if the person had the intent to do so and took a substantial step in carrying out that intent. The legal and ordinary meanings thus likely collapse here.

We end with a disclaimer. The parties do not discuss in detail whether an attempted domestic-violence offense is divisible from a completed domestic-violence offense within the meaning of the Armed Career Criminal Act. *See Descamps*, 570 U.S. at 257. We need not decide the issue either. We flag it merely to make clear that we have left it open for another day.

*Reason Two*: Delaine alternatively argues that the Ohio domestic-violence offense (which covers any "physical harm," Ohio Rev. Code § 2919.25(A)) does not always include the type of "*violent* force" that the elements clause requires. *Johnson*, 559 U.S. at 140. Delaine suggests that Ohio courts have given the phrases "injury" and "physiological impairment" in the statutory definition of "physical harm" a broad reach. Ohio Rev. Code § 2901.01(A)(3). For example, he points to a state decision that said a bank teller suffered a physiological impairment when she momentarily froze during a robbery. Appellant's Br. 46–47 (discussing *State v. Vore*, 2014 WL 1488742, at *3–4 (Ohio Ct. App. Apr. 14, 2014)).

*Gatson* compels us to reject this argument. At the outset, though, the government may well have overread the scope of our stare decisis rules. In response to Delaine's claim, it suggests that *Gatson* requires us to reject *every* potential reason why an Ohio domestic-violence offense might not qualify as a "violent felony." *Cf. Brumbach v. United States*, 929 F.3d 791, 795 (6th Cir. 2019). We are not so sure. Suppose a decision in Case A rejects a defendant's lone argument that a state-law conviction does not qualify as a violent crime because it does not meet the elements clause's conduct requirement. Suppose a defendant in Case B then raises a distinct argument: that the state-law conviction does not qualify as a violent felony because it does not meet the elements clause's state-of-mind requirement. Should Case A's stare decisis effect alone require the panel in Case B to reject this state-of-mind argument without considering the merits?

If it does, the Case A panel might have a duty to consider *every* conceivable claim about why a conviction does not qualify as a violent felony—even those that the first defendant did not raise. After all, if the panel did not do so, it might create binding (potentially mistaken) law on claims that merely "lurk[ed] in the record[.]" *Wright v. Spaulding*, 939 F.3d 695, 702 (6th Cir. 2019) (citation omitted). Yet this approach might also bump up against the party-presentation principle. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). That principle perhaps explains why we have said that a decision is *not* binding on an issue if the decision did not "consciously" resolve the issue. *Wright*, 939 F.3d at 702.

At day's end, we need not identify the precise scope of our stare decisis rules. Even if those rules have a narrower reach than the government proposes, *Gatson* still binds us. That opinion confronted Delaine's *specific claim*: that Ohio's domestic-violence statute does not require the "*violent* force" that the elements clause demands. *Johnson*, 559 U.S. at 140. When rejecting this argument, *Gatson* relied on the plain meaning of the Ohio definition of "physical harm" to conclude that the force that causes this harm reached the required level. 776 F.3d at 410–11. And a recent Supreme Court decision reaffirms *Gatson*'s logic by explaining that "any force that actually causes injury" qualifies as violent force. *Delligatti*, 604 U.S. at 432. Yet because *Gatson* did not refer to the Ohio cases that Delaine now cites, he suggests that *Gaston* "was incorrectly decided" and asks us to reevaluate it using his purportedly better arguments. *Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001). *Gatson*, though, remains controlling on the issue that it "consciously reached" until a changed circumstance (such as a new Supreme Court precedent on the meaning of "violent felony" or a new Ohio Supreme Court decision on the meaning of "physical harm") calls it into doubt. *Wright*, 939 F.3d at 702; *see United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014). And Delaine points to no changed circumstance here.

We affirm.