754 So.2d 784 (2000)
Rafael LAVIN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-1771.
District Court of Appeal of Florida, Third District.
March 22, 2000.
Rehearing Denied April 26, 2000.
*785 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Frank J. Ingrassia, Assistant Attorney General, for appellee.
Before SHEVIN and RAMIREZ, JJ., and NESBITT, Senior Judge.
RAMIREZ, J.
Rafael Lavin appeals his conviction of aggravated assault and sentence as a habitual violent felony offender to a four-year term of imprisonment. We reverse.
On October 12, 1998, Enrique Ojeda, while driving his car with Ivan Herrera as a passenger, was involved in a traffic altercation with Lavin in an area where Ojeda and Herrera were doing landscape work. Ojeda and Herrera testified at trial that, after exchanging words, Lavin left the scene, but returned with a shotgun which he aimed at Ojeda and threatened to kill him. Ojeda and Herrera further testified that they continued to work, ignoring Lavin for a period of twenty minutes while Lavin continued his threats, all in broad daylight and in the middle of an apartment complex. When Herrera heard police sirens, he saw Lavin leave. Ojeda then called the police and reported the altercation.
Officer Morris, accompanied by other officers, went to Lavin's apartment and searched it. The apartment search, as well as a search of Lavin's vehicle, failed to produce a shotgun. During his arrest, Lavin threatened the police officers and Ojeda.
During voir dire, the prosecutor remarked:
[STATE] Now when we get assigned at the State Attorney's Office, they give us a manual. And our manual instructs us that our mandate is two things. One is to make sure that the innocent are not charged.
*786 A defense objection was sustained. After a discussion sidebar, the prosecution continued: "Okay. Basically, our role is it [sic] make sure the innocent are not prosecuted and to make sure ..." An objection to this comment was overruled.
The next day, before the court resumed with jury selection, Lavin's counsel renewed her objection to the prosecutor's comment and moved to strike the panel. Although the trial court agreed that the statement was improper, the judge refused to strike the panel but offered a curative instruction, which the defense refused. We disagree with the trial court that the statement did not warrant striking the panel.
It is improper for the prosecutor to express his or her personal belief about a defendant's guilt. See Gore v. State, 719 So.2d 1197, 1201 (Fla.1998). The state's reference to the State Attorney's Manual which instructs all prosecutors to make sure that the innocent are not charged was obviously an expression of personal belief in Lavin's guilt which "compromised the jury's ability to fairly evaluate the evidence and, in turn, [defendant]'s right to a fair trial." Fryer v. State, 693 So.2d 1046, 1048 (Fla. 3d DCA 1997).
The prosecutor's remark here is similar to that condemned in Riley v. State, 560 So.2d 279, 280 (Fla. 3d DCA 1990) ("Why would I charge him with first-degree murder?... Because he's guilty of first-degree premeditated murder."). The remarks in Riley occurred during closing argument, in contrast with the offending statement here which occurred at the onset of the state's voir dire. The panel could have been stricken and, at that point, it would not have resulted in much wasted judicial effort. See, e.g., Reed v. State, 333 So.2d 524, 525-26 (Fla. 1st DCA 1976) (stating that "[o]nce again the extensive time and money expended in a criminal proceeding must go `down the drain' because of the over zealous argument of one prosecutor." The prosecutor had stated, among other offensive remarks, that: "The State doesn't prosecute someone because of their religion or their race or their nationality. We prosecute them because we believe they are guilty of crimes.").
The state argues that this issue was not preserved. Under Joiner v. State, 618 So.2d 174, 176 (Fla.1993), the defendant was held to have waived his Neil[1] objection when he accepted the jury. Joiner has been extended to other jury selection issues outside of the Neil context. See Karp v. State, 698 So.2d 577, 578 (Fla. 3d DCA 1997) (denial of motion to strike entire venire panel after potential juror spontaneously made allegedly prejudicial comments; held, issue not preserved); Stripling v. State, 664 So.2d 2, 3 (Fla. 3d DCA 1995) (trial court rulings that allegedly unduly restricted defendant's voir dire inquiry; held, issue not preserved); Green v. State, 679 So.2d 1294, 1294 (Fla. 4th DCA 1996) (time limitations imposed by trial court on voir dire examination; held, issue not preserved). Lavin exhausted his challenges and the trial court simply announced: "That's it. Bring [the jury panel] in." Thus, Lavin did not affirmatively accept the jury immediately prior to its being sworn without reservation of the earlier objection, unlike the defendant in Karp v. State, 698 So.2d 577, 578 (Fla. 3d DCA 1997), where the defendant "unconditionally accepted and tendered the selected jury before it was sworn without renewing his objection." However, this issue has already been decided in Milstein v. Mutual Sec. Life Ins. Co., 705 So.2d 639, 641 (Fla. 3d DCA 1998) ("It is our view that the logic of Joiner requires the litigant to renew the previous objection even where, as here, the litigant has made no statement affirmatively accepting the jury."). Consequently, the defendant failed to preserve his jury selection issue.[2]
*787 Lavin also challenges the admission of his threats as improper use of evidence of collateral bad acts. We agree that their admission was improper. Lavin's statements were made post-arrest, after he had allegedly attacked Ojeda and was transported back to the scene of the altercation. The trial court admitted the statements as probative of the Lavin's state of mind. Aggravated assault requires proof of a specific intent to do violence to the person of another. See §§ 784.011, 784.021, Fla. Stat. (1997); State v. White, 324 So.2d 630, 631 (Fla. 1975); State v. Shorette, 404 So.2d 816, 817 (Fla. 2d DCA 1981). But the threats here were more probative of Lavin's anger over his arrest than of his guilt of the crime charged, which had occurred two hours previously. Furthermore, the witnesses testified not only as to the threats against the victim, but as to threats against the arresting officers. See Jervis v. State, 727 So.2d 981, 982 (Fla. 5th DCA 1999) (finding that the trial court erred, albeit harmlessly, in allowing the deputy to state that the defendant had threatened to kill him after being arrested. "The threats occurred after the attack on [the victim] had been concluded and thus were not part of the criminal episode. They appear to have been the product of [the defendant's] anger at being arrested and possibly his having imbibed too much alcohol."); Stanley v. State, 648 So.2d 1268, 1269 (Fla. 4th DCA 1995)(reversing where "the officers testified that appellant was belligerent and threatened them. This testimony was irrelevant to any issue of the crimes charged and should not have been admitted."); Singer v. State, 647 So.2d 1021 (Fla. 4th DCA 1994) (reversing convictions for resisting a law enforcement officer without violence and obstructing an officer without violence based on the admission of defendant's post-arrest comment while in the back of the officer's squad car).
We reject the state's argument that the issue was not preserved. Lavin moved in limine to exclude the evidence, which the trial court denied. When the evidence was offered at trial, defense counsel objected.
Finally, we find that the trial court erred by precluding defense counsel from cross-examining Ojeda concerning his loss of the landscaping contract at the apartment complex as a result of the altercation with Lavin. "Interest, motive and animus are never collateral matters on cross-examination and are always proper." Charles W. Ehrhardt, Florida Evidence § 608.5 (1999). The fact that the loss occurred after the incident does not diminish the animosity the witness may have felt for the defendant at the time he was testifying at trial. As this court has stated, "evidence tending to establish that a witness appearing [sic] before the State for any reason other than to tell the truth should not be kept from the jury." Carmichael v. State, 670 So.2d 1178, 1179 (Fla. 3d DCA 1996) (reversing for the trial court's refusal, in a criminal prosecution, to allow cross-examination of a witness concerning a pending civil action between that witness and the defendant).
For the foregoing reasons, we reverse and remand for a new trial.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla.1984).
[2] We do not address whether the issue rises to the level of fundamental error because we find the other two grounds raised by the defendant warrant reversal in this case.