In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1325

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNY R. ANDERSON,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:11-CR-00201-001 — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED JANUARY 25, 2022 — DECIDED APRIL 30, 2024

Before RIPPLE, WOOD, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* This case concerns whether the district court improperly enhanced Denny Anderson's sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). ACCA mandates a 15-year minimum sentence for those convicted of possessing a gun after three or more prior convictions for a "violent felony." In this direct appeal (Anderson once had a habeas appeal before this court

too), Anderson argues that one of the prior convictions the district court relied on—his Florida conviction in 2001 for aggravated assault—covers reckless conduct and is therefore no longer a "violent felony" after *Borden v. United States*, 141 S. Ct. 1817 (2021), held that predicate acts must be intentional crimes. We held this case in abeyance pending the Florida Supreme Court's decision in *Somers v. United States*, 355 So. 3d 887 (Fla. 2022), which addressed whether the Florida crime of aggravated assault covers reckless conduct. With that case decided, we are prepared to address Anderson's appeal. We conclude that Anderson's Florida conviction in 2001 is not a predicate violent felony and that the government may not substitute one of Anderson's other prior convictions as an alternative predicate offense. Because Anderson does not have three predicate convictions, the ACCA enhancement was improper. We therefore vacate and remand for resentencing.

**I.**

Denny Anderson was sentenced in 2012 for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), after shooting at a man and then yelling racial slurs about him. The maximum penalty for the illegal-possession offense normally is 10 years, *id.* § 924(a)(2) (2018), but ACCA mandates a 15-year *minimum* sentence for anyone who has three prior convictions for a "violent felony," *id.* § 924(e). The indictment alleged eight prior felony convictions qualifying Anderson for a sentencing enhancement under § 924(e). Anderson pleaded guilty and was sentenced to an agreed-upon term of 180 months (15 years) in prison.

Anderson was resentenced in 2021, at the conclusion of a successful habeas petition he filed under 28 U.S.C. § 2255 in

2013. In that petition, he moved to vacate his sentence based on several defects. This court ruled that he was entitled to a hearing, *Anderson v. United States*, 865 F.3d 914, 922 (7th Cir. 2017), and the district court vacated the sentence. The government recharged him in a superseding indictment that listed the same prior convictions as in the original indictment, and the government again maintained that he was subject to a 15-year minimum sentence. In the factual basis supporting Anderson's renewed guilty plea, the government stated that Anderson had been convicted of three prior felonies. The parties agree that two—a 1981 burglary and a 1987 robbery—are ACCA predicates. The third offense the government mentioned was a 1995 Class C felony conviction for battery in Indiana. The original indictment, however, gave the wrong date of conviction, and, at the plea hearing for the superseding indictment, the government said the conviction was from "Marion County, Indiana," but has since acknowledged that it is from Hendricks County, Indiana.

As the case proceeded to sentencing, the probation office supplied information about Anderson's criminal history. The Presentence Investigation Report listed as "Adult Criminal Convictions" three violent felonies—the burglary from 1981, the robbery from 1987, and an aggravated assault from 2001 in Florida. Anderson's 1995 Indiana battery offense was included under "Other Arrests," a section listing offenses of which Anderson was *not* convicted. The PSR also stated that the battery "charge" was "[d]ismissed per plea agreement."

The district court agreed that Anderson's convictions for burglary, robbery, and Florida aggravated assault qualified as violent felonies, triggering a 15-year minimum sentence. The court did not discuss the Indiana battery offense as a predicate

conviction. Neither party objected to the PSR, which the court adopted, and Anderson did not object to his designation as an armed career criminal. The court then resentenced him to 188 months in prison.

After Anderson filed this appeal to challenge his 15-year minimum sentence under ACCA, the district court permitted the government to supplement the record with three sets of documents. The first is a copy of Anderson's "judgment of conviction" for felony battery in Indiana on October 20, 1995, reflecting a sentence of probation. The second is a copy of the docket for that case. The docket shows that the state petitioned to revoke probation several months after the judgment. That petition was followed by a final entry stating "[c]ase dismissed per order." The third is a document showing that, shortly before the date of that final entry, Anderson entered into a plea deal in which the state agreed to "dismiss." The final entry on the docket reflects the order granting that motion to dismiss.

## II.

This case turns on whether Anderson's 2001 conviction for assault in Florida, or the 1995 battery offense in Indiana, qualify as the third predicate conviction and therefore properly subjected him to a higher minimum sentence under ACCA. *See* 18 U.S.C. § 924(e). Ordinarily we review that question de novo. *United States v. Love*, 7 F.4th 674, 678 (7th Cir. 2021). But because Anderson did not contest his ACCA designation in the district court, we review that designation for plain error. *United States v. Williams*, 931 F.3d 570, 573 (7th Cir. 2019).

**A.**

Anderson first argues that his Florida conviction for aggravated assault is plainly not a "violent felony" because assault under Florida law, FLA. STAT. § 784.021, includes reckless conduct, and therefore the scope of the crime is too broad to constitute a violent felony. A state offense is a violent felony for ACCA if it "necessarily involves the defendant's 'use, attempted use, or threatened use of physical force against the person of another.'" *Borden*, 141 S. Ct. at 1822 (quoting 18 U.S.C. § 924(e)). A state offense is overbroad (and therefore not a violent felony) if it requires only the reckless use, attempted use, or threatened use of force. *Id.* at 1821–22.

As mentioned earlier, we waited for the Florida Supreme Court to rule on whether the crime of assault in that state includes reckless conduct. It has done so, holding that "an assault cannot be committed by a reckless act." *Somers*, 355 So. 3d at 892. But that decision, Anderson contends, does not resolve the matter before us. According to Anderson, the relevant inquiry is whether the law *at the time of his conviction* was broader than the corresponding federal law. And at the time of Anderson's conviction in 2001, Florida courts were split on the breadth of the assault statute. Some appellate courts had held that assault could be committed recklessly, *see LaValley v. Florida*, 633 So. 2d 1126, 1127–28 (Fla. Dist. Ct. App. 1994); *Kelly v. Florida*, 552 So. 2d 206, 208 (Fla. Dist. Ct. App. 1989), while others had reached the opposite conclusion, *see, e.g.*, *Lavin v. Florida*, 754 So. 2d 784, 787 (Fla. Dist. Ct. App. 2000) ("Aggravated assault requires proof of a specific intent to do violence to the person of another."); *Florida v. Shorette*, 404 So. 2d 816, 817 (Fla. Dist. Ct. App. 1981) (same); *J.C.M. v. Florida*, 375 So. 2d 873, 873–74 (Fla. Dist. Ct. App. 1979) (same).

As an initial matter, Anderson is correct that we look to the law at the time of the offense to determine whether a crime is a violent felony under ACCA. *See Love*, 7 F.4th at 678 ("We consider the version of the State's criminal statute in effect at the time of the offense."); *cf. McNeill v. United States*, 563 U.S. 816, 820 (2011) (considering the "law under which the defendant was convicted" in determining whether a defendant committed a "serious drug offense" under ACCA).

The breadth of the Florida aggravated assault statute at the time of Anderson's conviction is not easily discerned. Under rules of federal statutory construction, we ordinarily presume that a court's construction of a federal statute merely clarifies existing law and is "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994). Under this presumption, the aggravated assault statute at the time of Anderson's 2001 conviction would have the same meaning as the Florida Supreme Court's interpretation in *Somers* in 2022. But because we are dealing with a Florida statute, we must apply Florida's rules of statutory construction. *See, e.g.*, *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999) ("That other jurisdictions favor a policy cannot weigh heavily in a federal court's determination in an unsettled area of a state's law if there is any significant indication that that state's own law either disfavors the policy in question directly *or that promoting the policy would run afoul of established state standards of judicial interpretation or statutory construction*." (emphasis added)). And Florida has a unique approach to statutory interpretation: In *Florida v. Barnum*, 921 So. 2d 513, 528 (Fla. 2005), the Florida Supreme Court held that "all decisions of this Court disagreeing with a statutory construct previously rendered by

a district court constitute 'changes' in the applicable law from the law at the time of conviction." Moreover, court-initiated "changes" in the law do not apply retroactively unless the court states that the change satisfies a three-part test enunciated in *Witt v. Florida*, 387 So. 2d 922, 926 (Fla. 1980). *Barnum*, 921 So. 2d at 518.

Because the Florida Supreme Court decision in *Somers* disagrees with the statutory construct put forth in *LaValley* and *Kelly*, it ostensibly constitutes a "change" in the law. *Barnum*, 921 So. 2d at 528. (Put aside, for the time being, the conflicting decisions in *Lavin*, *Shorette*, and *J.C.M.*, which we will return to in a moment.) But *Somers* did not cite or apply the *Witt* retroactivity test; the opinion said nothing at all about retroactivity. Therefore, *Somers* does not announce a retroactive change in the law. With no ruling from the state's highest court on the law at the time of Anderson's conviction, we turn to the Florida appellate courts to determine the law of the state. *See Barnum*, 921 So. 2d at 523 (holding that "decisions of the district courts represent the law of the state, binding all Florida trial courts" unless there is "interdistrict conflict"); *United States v. Cornette*, 932 F.3d 204, 214 (4th Cir. 2019) ("[W]hen confronting matters of state law that have not yet been decided by the state's high court, we typically turn to the state's intermediate appellate courts."). But, as discussed, there was an interdistrict conflict at the time of Anderson's conviction, meaning there was no "law of the state." *Barnum*, 921 So. 2d at 523.

Given this state of affairs—that there was no unified law of the state in 2001 on whether aggravated assault could be committed recklessly—the "realistic probability" test is an apt tool to use. We apply that doctrine when, in comparing a state

statute to its federal counterpart, "the language of the state statute is ambiguous or has indeterminate reach." *United States v. Turner*, 47 F.4th 509, 527 (7th Cir. 2022) (Jackson-Aki-wumi, J., concurring); *see also Aguirre-Zuniga v. Garland*, 37 F.4th 446, 451 (7th Cir. 2022) (applying the same test in the immigration context). Under this approach, we ask whether there is a "realistic probability, not a theoretical possibility, that the [s]tate would apply its statute to conduct that falls outside the generic definition of the crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To show a realistic probability, a defendant must "at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id*.

Anderson has done just that by identifying Florida appellate court decisions ruling that assault could be committed recklessly. The Eleventh Circuit rejected this conclusion when presented with a similar argument; it reasoned that the Florida Supreme Court's decision in *Somers* "tells us what the statute always meant." *Somers v. United States*, 66 F.4th 890, 896 (11th Cir. 2023) (citation omitted). But the Eleventh Circuit did not address Florida's approach to statutory interpretation, which, as we explained above, we are bound to follow when interpreting Florida law. Because the Florida Supreme Court did not say that *Somers* applied retroactively, the decisions from the Florida appellate courts tell us how the statute was applied at the time. *See Barnum*, 921 So. 2d at 523; *Cornette*, 932 F.3d at 214. And, based on those conflicting decisions, there was a realistic probability that courts would punish conduct that included recklessness.

We recognize that, in applying the realistic-probability test to rule that Anderson's 2001 conviction is not a predicate ACCA conviction, we are relying on appellate decisions like *LaValley* and *Kelly* that we now know, based on Florida's decision in *Somers*, erroneously held that assault could be convicted recklessly. But at the time of Anderson's conviction, these decisions were not erroneous. *See Pardo v. Florida*, 596 So. 2d 665, 666 (Fla. 1992) ("[T]he decisions of the district courts of appeal represent the law of Florida unless *and until* they are overruled by [the Florida Supreme Court]." (emphasis added)). And this problem could arise any time a court follows a state law as interpreted at the time of sentencing, and a state supreme court later takes a different position. Furthermore, in a case as close as this one, we must consider that defendants are often unable to take advantage of favorable changes in the law. *See, e.g.*, *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) (new judicial decisions that interpret a criminal statute more narrowly are not extraordinary and compelling reasons for compassionate release); *Jones v. Hendrix*, 143 S. Ct. 1857, 1869 (2023) (new judicial decisions that interpret a criminal statute more narrowly do not warrant relief under a second or subsequent collateral attack under 28 U.S.C. § 2244(b)(2)). Our ruling today places the government on no worse footing.

Because Florida appellate cases using the recklessness standard were good law at the time of Anderson's conviction in 2001, a defendant faced a realistic probability that a trial court would have relied on them to convict him of aggravated assault when that defendant had only a reckless state of mind. Given that realistic probability, the government may not rely on the 2001 Florida conviction as an ACCA predicate.

**B.**

The government hedges its bets by proposing a "backup" offense if Anderson's 2001 Florida conviction cannot be an ACCA predicate. The government reasons that Anderson's 1995 battery offense from Indiana can replace the Florida conviction and therefore sustain his enhanced sentence under ACCA. This would mean, the government argues, the district court did not plainly err in applying ACCA.

Anderson opposes this backup plan. In Anderson's view, he currently has *no* Indiana conviction for battery. He does not dispute that the charge he faced in 1995 for battery is a "violent felony" under ACCA; he instead contends that his "conviction" was vacated and thus is not a predicate crime. *See* 18 U.S.C. § 921(a)(20). In support he points to two sources. The first is the PSR—which, because the district court adopted it, he argues we must accept unless clearly erroneous. He highlights its statement that his battery "charge" was "dismissed." The second is the material that the government submitted after Anderson appealed. This includes a copy of the judgment in 1995 reflecting his battery conviction and probation. He highlights the docket sheet showing a later-filed petition to revoke probation and the final entry stating "[c]ase dismissed per order."

The government counters that the battery conviction is intact and that "dismissed" refers to the charge of Anderson's probation violation. Relying on its supplemental submission, the government observes that, after Anderson's battery conviction, the state charged him with a probation violation, Anderson reached a plea deal about *that* charge, and that charge is what the state agreed to "dismiss." From this sequence, the

government concludes that only the probation charge was dismissed; the underlying conviction for battery remains.

The government is correct that the Indiana battery conviction is intact. The "dismissal" of the "charge" referenced in the PSR *must* be the charge of the probation violation, as it was the only charge pending on the referenced date. By that time, the battery charge had previously been reduced to a judgment of conviction. And judgments of conviction can only be vacated or set aside, not "dismissed."

Even so, in light of the way the government presented information about the battery conviction, the government cannot rely on the conviction to support the ACCA enhancement. The government can substitute one predicate offense (the Indiana battery) for one that the district court can no longer rely on (the Florida assault) only when the substitution would not offend principles of fair notice. *See White v. United States*, 8 F.4th 547, 553–54 (7th Cir. 2021); *Dotson v. United States*, 949 F.3d 317, 320 (7th Cir. 2020). Fair notice requires that defendants receive a reasonable opportunity to challenge at their sentencings the predicates used to enhance their sentence. *Dotson*, 949 F.3d at 320–21. This rule enables defendants to retrieve during the sentencing phase, rather than years later which might be difficult, information about their convictions that the government asserts are ACCA predicates and that defendants seek to contest. We conclude that Anderson did not receive fair notice that the government was relying on his 1995 battery conviction in Indiana.

According to the government, Anderson cannot feign surprise at the use of his battery conviction because he had reason to believe that it could serve as a predicate. The government observes that both the original and superseding

indictment listed his battery conviction as a felony in violation of § 922(g) and § 924(e), and the government's factual basis for the plea also referred to his battery conviction.

Yet the details supplied to Anderson undercut the quality of this notice. First, the government included the wrong date of conviction in its original indictment. Second, it gave the wrong county in its factual basis. Third, the last document about Anderson's convictions to come to him—the PSR furnished before resentencing in 2021—did not even include the battery offense under past "convictions," did not refer to it as one of his three ACCA predicates, and instead reported the battery "charge" as "dismissed."

Given the conflicting and misleading details supplied to Anderson, he did not have fair notice that this battery conviction might serve as an ACCA predicate. To conclude otherwise would require future defendants to challenge not only all prior convictions (with little help from the government, if the dates and counties of conviction can be wrong), but also all prior arrests and charges in the PSR that may later turn out to be convictions. This would prolong sentencing hearings into "extraordinarily difficult exercises over questions where the answers may never matter." *Dotson*, 949 F.3d at 322.

Anderson's case is different from that of *White*, 8 F.4th at 553, and *Dotson*, 949 F.3d at 318. The defendants there received fair notice because the convictions the government sought to substitute were correctly described in documents such as the PSR (even if the convictions were not listed as ACCA predicates). Here, the PSR, which Anderson received just before resentencing, did not list the battery offense as a conviction at all, undermining whatever notice he previously received from the indictment and leaving him with no reason

to contest the battery as a possible ACCA predicate. Further, the defendant in *Dotson* conceded that the challenged conviction could be an ACCA predicate; Anderson did not.

For these reasons, the government cannot substitute the Indiana battery conviction for the Florida assault conviction. With both of those convictions unavailable, only two violent felonies remain, yet ACCA requires three. Therefore, the district court's decision to apply ACCA's 15-year minimum floor to his sentence was plain error—clear, prejudicial error affecting the sentencing proceeding's fairness. *See Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016). Anderson must be resentenced without the mandatory 15-year enhancement.

Accordingly, we VACATE the judgment and REMAND for resentencing.

RIPPLE, *Circuit Judge*, dissenting. In my view, the majority gives short shrift to the decision of the Florida Supreme Court in *Somers v. United States*, 355 So. 3d 887 (Fla. 2022). This opinion of the Florida Supreme Court makes clear that it was aware that the Eleventh Circuit sought its guidance on the elements of Florida's aggravated assault statute because the Government sought to enhance Mr. Somers's sentence on the basis of such a conviction. The Florida Supreme Court therefore understood that the Eleventh Circuit needed to know the scope of the Florida aggravated assault statute at the time Mr. Somers was convicted of the predicate offense. *See id.* at 890–91. *See also McNeill v. United States*, 563 U.S. 816, 820 (2011). The Florida Supreme Court's employment of the present tense in the presentation of its analysis is a common convention and should not be read to imply that the court was not addressing its analysis to the time of the conviction of the predicate offense. *Cf. id.* (noting that questions regarding the scope of past crimes in the context of the ACCA "can only be answered by reference to the law under which the defendant was convicted").

We owe the Supreme Court of Florida a presumption of regularity with respect to the answer that it gave our colleagues in the Eleventh Circuit. The Florida Justices were entirely cognizant of the nature of the Eleventh Circuit's inquiry, and they answered that inquiry. The fact that the Justices did not address explicitly the rule of retroactivity previously articulated in *State v. Barnum*, 921 So. 2d 513, 528–29 (Fla. 2005), and *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992), does not justify our rejection of their analysis. Given the lack of unanimity among the Florida appellate districts prior to *Somers*, the Florida Supreme Court's decision did not displace an established state-wide rule.

I would affirm the judgment of the district court.