**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-13391

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CHRISTOPHER C. PINKSTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20194-WPD-1

_____

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a serial bank robber is a career offender under the United States Sentencing Guidelines. After Christopher Pinkston had been convicted of federal

bank robbery, *see* 18 U.S.C. § 2113(a), and Florida aggravated assault, *see* FLA. STAT. § 784.021, he robbed two more banks and pleaded guilty to additional charges of federal bank robbery. The district court enhanced Pinkston's sentence under the career-offender guideline because it determined that his convictions for bank robbery and aggravated assault were "crime[s] of violence." We affirm.

## I. BACKGROUND

In February 2021, Christopher Pinkston entered a bank in Miami and handed a teller a note that read, "I need 30,000 Dollars or everybody[']s Dead." The teller gave Pinkston $1,000. Three weeks later, Pinkston entered a different bank and handed a teller a note that read, "This is a robbery I need 30,000 make it quick." The teller gave Pinkston $24,900. Pinkston later confessed that he "robbed those white people" and would "continue robbing them white people." He pleaded guilty to two counts of bank robbery in violation of section 2113(a).

A probation officer prepared a presentence investigation report. The report opined that Pinkston was a career offender under section 4B1.1 of the Sentencing Guidelines because he "was at least 18 years-old at the time of the instant offense," "the instant offense is a felony crime of violence," and he had prior convictions for federal bank robbery and Florida aggravated assault that also constituted "crime[s] of violence." The report explained that Pinkston's status as a career offender produced a guideline imprisonment

range of 151 to 188 months. *See* United States Sentencing Guidelines Manual ch. 5, pt. A (Nov. 2018). Absent the career-offender enhancement, Pinkston's guideline range would have been 70 to 87 months. *See id.*

The district court agreed that Pinkston was a career offender. It questioned how bank robbery could be a non-violent crime. And it referenced "prior decisions" of our Court concluding that "aggravated assault is a predicate crime for an armed career criminal and career offender." The district court agreed with the report that the guideline range was 151 to 188 months and sentenced Pinkston to 160 months of imprisonment.

## II. STANDARD OF REVIEW

We review *de novo* whether convictions qualify as crimes of violence under the Sentencing Guidelines. *United States v. Burke*, 863 F.3d 1355, 1358 (11th Cir. 2017).

## III. DISCUSSION

Pinkston is a career offender under the guidelines if he "was at least eighteen years old at the time [he] committed" his current federal offense, the offense "is a felony that is either a crime of violence or a controlled substance offense," and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). "Crime of violence" means "any [felony] offense under federal or state law" that falls into one of two categories. *Id.* § 4B1.2(a). The first category, described in the elements clause, includes offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force

against the person of another." *Id.* § 4B1.2(a)(1). The second category, described in the enumerated crimes clause, includes a list of specific offenses like "robbery" and "aggravated assault." *Id.* § 4B1.2(a)(2).

We apply the "categorical approach" to classify a conviction for sentencing a career offender. *United States v. Rowe*, 143 F.4th 1318, 1322 (11th Cir. 2025). This approach requires us to identify "the least culpable conduct that can sustain a conviction." *Id.* If the least culpable conduct involves sufficient force, the conviction satisfies the elements clause. *United States v. Brooks*, 112 F.4th 937, 945 (11th Cir. 2024). If the least culpable conduct matches or exceeds the "generic form" of an enumerated offense, the conviction satisfies the enumerated crimes clause. *United States v. Harrison*, 56 F.4th 1325, 1336 (11th Cir. 2023).

We divide our discussion of Pinkston's convictions into two parts. We first explain that federal bank robbery is a crime of violence under the career-offender guideline. We then explain that Florida aggravated assault is also a crime of violence under the career-offender guideline.

### A. Federal Bank Robbery Is a Crime of Violence.

A person commits federal bank robbery under section 2113(a) if he uses "force and violence" or "intimidation" to "take[] . . . from the person or presence of another" any "property or money or any other thing of value" that "belong[s] to . . . or [is] in the care, custody, control, management, or possession" of "any bank, credit union, or any savings and loan association." 18 U.S.C.

§ 2113(a); *United States v. Armstrong*, 122 F.4th 1278, 1288 (11th Cir. 2024), *cert. denied*, 146 S. Ct. 613 (2025). Federal bank robbery is a crime of violence under both the elements clause and the enumerated crimes clause of the career-offender guideline. We discuss each clause in turn.

### 1. Federal Bank Robbery Is a Crime of Violence under the Elements Clause.

We held a decade ago that federal bank robbery is a crime of violence under a statutory "use-of-force clause" applicable to offenses that "'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" *In re Sams*, 830 F.3d 1234, 1237–39 (11th Cir. 2016) (quoting 18 U.S.C. § 924(c)(3)(A)). The elements clause, under the career-offender guideline, is identical except that it does not include the use of force or threatened force against "property." *See* U.S.S.G. § 4B1.2(a)(1). This distinction, although material in some contexts, makes no difference for Pinkston because the "force and violence" or "intimidation" required to commit federal bank robbery applies only to "person[s]." 18 U.S.C. § 2113(a). Consistent with the plain meaning of the text, "[o]ur . . . definition of intimidation" under section 2113(a) requires "conduct from which a reasonable person could infer a threat of *bodily harm*." *Armstrong*, 122 F.4th at 1288 (emphasis added) (citation modified).

Pinkston does not dispute this analysis. He contends instead that *Borden v. United States*, 141 S. Ct. 1817 (2021), abrogated our

precedents. *Borden* held that the elements clause of the Armed Career Criminal Act excludes "offenses criminalizing reckless conduct." *Id.* at 1825 (plurality opinion); *id.* at 1834–35 (Thomas, J., concurring in the judgment). And that clause is "virtually identical" to the elements clause of the career-offender guideline. *United States v. Ochoa*, 941 F.3d 1074, 1107 (11th Cir. 2019).

*Borden* does not help Pinkston because federal bank robbery has a *mens rea* element of knowledge, not recklessness. In *Carter v. United States*, the Supreme Court considered the elements of bank robbery under section 2113(a). *See* 530 U.S. 255, 267–68 (2000). The Court defined the *actus reus* of the crime as "the taking of property of another by force and violence or intimidation." *Id.* at 268. It treated "taking money" and "using force" or intimidation as two distinct "acts" necessary for the commission of the crime. *Id.* And it held that the *mens rea* was "knowledge with respect to the *actus reus*." *Id.* In other words, federal bank robbery requires, at a minimum, knowing intimidation. *See United States v. Carr*, 946 F.3d 598, 605 & n.7 (D.C. Cir. 2020) (joining seven circuits in holding that "the federal bank robbery statute . . . requir[es] the defendant to know his actions were objectively intimidating").

Pinkston insists that *Carter* does not help the government because the Supreme Court described section 2113(a) as a "general intent" crime. 530 U.S. at 268 (emphasis omitted). Pinkston maintains that this description matters because, in his view, *Borden* held that the elements clause "requires a specific intent to direct harm at a specific individual." We disagree.

*Borden* "did not use the phrase 'specific intent.'" *Somers v. United States*, 15 F.4th 1049, 1053 (11th Cir. 2021). And it acknowledged that an offense can satisfy the elements clause when the offense requires "'knowing conduct.'" *Id.* (quoting *Borden*, 141 S. Ct. at 1828). Federal bank robbery clears that bar because it requires knowing intimidation.

Pinkston also misunderstands our decision in *United States v. Kelley*, 412 F.3d 1240 (11th Cir. 2005), as supporting his argument. We explained in *Kelley* that "a defendant can be convicted under section 2113(a) even if he did not intend for an act to be intimidating." *Id.* at 1244. We also explained that "intimidation occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *Id.* (citation modified). But neither statement endorses Pinkston's position that robbery under section 2113(a) has "a low-level *mens rea* standard . . . on par with recklessness."

A defendant can know an act is intimidating without intending for it to have that effect. *See Borden*, 141 S. Ct. at 1823 (plurality opinion) (comparing purpose and knowledge). And the objective standard we use to determine "[w]hether a particular act *constitutes* intimidation" does not conflict with *Carter*'s requirement that the intimidation be knowing. *Kelley*, 412 F.3d at 1244 (emphasis added). To the extent our pattern jury instructions fail to reflect this requirement, *see* Eleventh Circuit Pattern Jury Instructions, Criminal Cases O76.1 (2025), the pattern instructions "are not binding" and

should be revised to align with controlling caselaw. *United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007).

Pinkston's final argument misunderstands the import of *Counterman v. Colorado*, 143 S. Ct. 2106 (2023). As he reads that decision, the Supreme Court held that all crimes "rely[ing] on threats-based criminal conduct have a *mens rea* element of recklessness." But *Counterman* held only that crimes prohibiting "[t]rue threats" must have a minimum *mens rea* of recklessness to avoid chilling speech protected by the First Amendment. *Id.* at 2111–13. It did not hold that crimes requiring *more* than recklessness now have a lesser *mens rea*.

### 2. Federal Bank Robbery Is Also a Crime of Violence under the Enumerated Crimes Clause.

Even if federal bank robbery had a *mens rea* of recklessness, it still would be a crime of violence. *Borden*'s exclusion of reckless crimes applies only to the "elements clause." *Borden*, 141 S. Ct. at 1829 n.6 (plurality opinion); *id.* at 1835 (Thomas, J., concurring in the judgment). And we held in *Sams* that federal bank robbery convictions "categorically count as crimes of violence under the [g]uidelines' enumerated crimes clause." 830 F.3d at 1240–41. Although the version of the guidelines applicable in *Sams* mentioned "robbery" only in a comment, *see id.* at 1241 (citing U.S.S.G. § 4B1.2 cmt. n.1 (Nov. 2015)), the version applicable here includes "robbery" in the text, *see* U.S.S.G. § 4B1.2(a)(2) (Nov. 2018). *Sams* controls our interpretation of that text.

Pinkston contends that a 2016 amendment to the guidelines abrogated *Sams*. But the amendment did no such thing. The amended text lists robbery as an enumerated crime. U.S.S.G. § 4B1.2(a)(2) (Aug. 2016 supplement). And the Sentencing Commission stated in its "Reason[s] for Amendment" that the "amended guideline . . . continues to rely on existing case law for purposes of defining" robbery. *Id.* app. C, amend. 798. The amendment endorses, not abrogates, our prior holding.

Pinkston also argues that we can ignore *Sams* "because it was a product of [our] abbreviated proceedings [for] evaluating a second/subsequent motion to vacate a sentence." But we have "already held that our prior-panel-precedent rule applies with equal force . . . to prior panel decisions published in the context of applications to file second or successive petitions." *United States v. St. Hubert*, 909 F.3d 335, 345 (11th Cir. 2018), *abrogated on other grounds by United States v. Taylor*, 142 S. Ct. 2015 (2022). So federal bank robbery still qualifies as a crime of violence under the enumerated crimes clause. *Sams*, 830 F.3d at 1241.

### B. Florida Aggravated Assault Is a Crime of Violence.

Florida defines aggravated assault as an "assault" with "an intent to commit a felony" or with "a deadly weapon without intent to kill." FLA. STAT. § 784.021(1). The assault element has three components. It requires "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-

founded fear in such other person that such violence is imminent." *Id*. § 784.011(1).

We have long held that Florida aggravated assault constitutes a "violent felony" under the elements clause of the Armed Career Criminal Act because it "include[s] as an element" the "threatened use of physical force against the person of another." *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013) (citation modified), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). We extended that holding to the "identical . . . elements clause of [guideline] 4B1.2(a)(1)." *United States v. Golden*, 854 F.3d 1256, 1257 (11th Cir. 2017). And we later held that *Borden* had not overruled these precedents. *See Somers v. United States*, 66 F.4th 890, 892–93 (11th Cir. 2023). We concluded that *Borden* did not apply because the Supreme Court of Florida "ha[d] told us . . . based on the plain language of the Florida [assault] statute . . . [that] assault under Florida law require[d] a *mens rea* of at least knowing conduct and 'an intentional threat to do violence to another person.'" *Id*. at 894–95 (quoting *Somers v. United States*, 355 So. 3d 887, 891 (Fla. 2022)).

Pinkston concedes that Florida aggravated assault is now a crime of violence. But he argues that assault offenders did not commit a crime of violence if they committed their offense before the Supreme Court of Florida held in 2022 that the *mens rea* for assault requires more than recklessness. We rejected this argument in *Somers* and recently rejected it again in the immigration context. *See*

*Senatus v. U.S. Att'y Gen.*, No. 24-10514, slip op. at 4–5, 10–11 (11th Cir. June 8, 2026). We reach the same result here.

The defendant in *Somers* had sustained his assault conviction by November 2012. *See* 66 F.4th at 892. When the Supreme Court of Florida clarified the *mens rea* during the pendency of his federal appeal, he invoked "earlier decisions of Florida's intermediate [appellate] courts" that suggested "aggravated assault can be committed recklessly." *Id.* at 895–96. We declined to follow those decisions because the state supreme court had "told us unambiguously" how to interpret Florida's assault statute. *Id.* at 896. And we reasoned that when a court of last resort "'interprets a statute,'" it ordinarily "'tells us what that statute always meant.'" *Id.* (alteration adopted) (quoting *United States v. Fritts*, 841 F.3d 937, 943 (11th Cir. 2016); *accord Senatus*, slip op. at 10; *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994)).

Pinkston urges us to revisit *Somers* in the light of *Brown v. United States*, 144 S. Ct. 1195 (2024). But *Brown* confirmed what we had already held: the recidivist sentencing enhancements in the Armed Career Criminal Act and the Sentencing Guidelines require a "backward-looking examination" of "the law as it was when the defendant violated it." *See id.* at 1204 (citation modified) (discussing the Act); *United States v. Dubois*, 94 F.4th 1284, 1298 (11th Cir. 2024) (discussing the guidelines), *vacated*, 145 S. Ct. 1041, *reinstated*, 139 F.4th 887 (11th Cir. 2025). We performed this backward-looking inquiry in *Somers* by asking what the controlling statutes "always meant." 66 F.4th at 896 (citation modified).

*Brown* did not foreclose that approach. To the contrary, the Supreme Court explained long before *Brown* that "it is not accurate to say" its interpretive decisions "change[] the law," *Rivers*, 511 U.S. at 313 n.12 (citation modified), because "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction," *id.* at 312–13. *Brown* had no occasion to apply this principle because the case involved a "subsequent statutory amendment" to the federal drug schedules. 144 S. Ct. at 1201, 1204. And statutes, unlike judicial decisions, "operate only prospectively." *Rivers*, 511 U.S. at 311–12 (citation modified). Absent Supreme Court precedent eliminating this fundamental distinction, *Somers* controls.

In any event, Pinkston would fare no better under his preferred, though flawed, approach. If Pinkston had his way, we would "consult the elements of the aggravated assault crime as understood" by the Florida intermediate appellate courts "when he was convicted." Pinkston received his aggravated assault conviction in Miami-Dade County, where the Third District Court of Appeal governs. Florida trial courts are "bound to follow" appellate decisions in the district where they are located. *Nader v. Fla. Dep't of Highway Safety & Motor Vehicles*, 87 So. 3d 712, 724 (Fla. 2012) (citation modified). And the Third District held, even at the time of Pinkston's conviction, that aggravated assault requires proof of more than recklessness. *See, e.g.*, *State v. Conroy*, 118 So. 3d 305, 312 n.10 (Fla. Dist. Ct. App. 2013); *Lavin v. State*, 754 So. 2d 784, 787 (Fla. Dist. Ct. App. 2000). Nothing changed for Pinkston when the

Supreme Court of Florida later confirmed that recklessness is insufficient. *See Somers*, 355 So. 3d at 891. He would remain a career offender either way.

## IV. CONCLUSION

We **AFFIRM** Pinkston's sentence.

21-13391         WILLIAM PRYOR, C.J., Concurring         1

WILLIAM PRYOR, Chief Judge, Concurring:

The panel opinion explains why we are bound by *Somers v. United States* to conclude that Florida aggravated assault is a crime of violence under the Sentencing Guidelines. *See* 66 F.4th 890 (11th Cir. 2023). One of our sister circuits has expressly disagreed with *Somers. See United States v. Anderson*, 99 F.4th 1106, 1112 (7th Cir. 2024). And three other circuits have reached incompatible conclusions. *See United States v. Cornette*, 932 F.3d 204, 214 (4th Cir. 2019); *United States v. Vickers*, 967 F.3d 480, 486 (5th Cir. 2020), *vacated and remanded on other grounds*, 141 S. Ct. 2783 (2021); *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1127 (8th Cir. 2013). I write separately to explain why our sister circuits are wrong.

*Somers* and its detractors all acknowledge that backward-looking recidivist enhancements require courts to determine the elements of a predicate offense based on "the law as it was when the defendant violated it." *Brown v. United States*, 144 S. Ct. 1195, 1204 (2024); *see, e.g.*, *Somers*, 66 F.4th at 896; *Cornette*, 932 F.3d at 214. To comply with that requirement in *Somers*, we certified to the Supreme Court of Florida two questions about the *mens rea* applicable to the defendant's aggravated assault offense. *Somers v. United States*, 15 F.4th 1049, 1056 (11th Cir. 2021). The Supreme Court of Florida accepted certification, recited the defendant's criminal history, and told us unequivocally that assault in Florida "requires at least knowing conduct." *Somers v. United States*, 355 So. 3d 887, 888–89, 892 (Fla. 2022). We then applied that controlling pronouncement to hold that the defendant had been convicted under a statute

that has as an element the knowing threat of force. *Somers*, 66 F.4th at 894–96.

Other circuits would have taken a different approach. In their view, the backward-looking nature of recidivist enhancements requires a federal court to ignore a decision from a state court of last resort when the decision postdates the defendant's predicate offense. *See Vickers*, 967 F.3d at 486; *Cornette*, 932 F.3d at 214; *Roblero-Ramirez*, 716 F.3d at 1127. They are wrong.

Any methodology for determining state law that declines to apply the "most recent pronouncement" from a state's highest court is necessarily suspect. *Butler v. Gualtieri*, 41 F.4th 1329, 1335 (11th Cir. 2022). Indeed, the Supreme Court held in *Johnson v. United States*, a case involving a recidivist much like *Somers*, that it was "bound" by a state supreme court's decision that postdated the defendant's prior conviction by four years. 559 U.S. 133, 135–38 (2010). At no point did the Supreme Court ever suggest it was necessary to consider state precedents decided earlier. The Court instead consulted the latest state precedent, consistent with settled practice when federal courts review questions of state law.

The contrary practice endorsed by our sister circuits misunderstands the categorical approach. We evaluate a predicate offense under that approach by determining the least culpable conduct prohibited by the statute of conviction. *See, e.g.*, *Descamps v. United States*, 570 U.S. 254, 261 (2013); *Taylor v. United States*, 495 U.S. 575, 600 (1990). This inquiry is legal, not factual, because it focuses on the statutory "elements" of a crime. *Mathis v. United*

21-13391          WILLIAM PRYOR, C.J., Concurring          3

*States*, 579 U.S. 500, 504 (2016). State courts of last resort tell us what those elements are. *Johnson*, 559 U.S. at 138. And their decisions ordinarily tell us what the elements "always" were from enactment—notwithstanding prior inconsistent interpretations. *Somers*, 66 F.4th at 896 (citation modified); *accord Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994); *Aspilaire v. U.S. Att'y Gen.*, 992 F.3d 1248, 1256 (11th Cir. 2021).

Sometimes a conviction conflicts with controlling state precedent. A trial court might misstate controlling precedent in its jury instructions. Or an intermediate appellate court might misconstrue a statute before a later decision clarifies the proper construction. But those are errors of *state* law for *state* courts to correct. Just as federal courts may not grant habeas relief "for errors of state law," *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation modified), federal sentencing courts may not look behind a defective state conviction. The career-offender guideline and related sentencing enhancements turn on the "fact of a prior conviction" alone. *Descamps*, 570 U.S. at 269 (citation modified); *see* United States Sentencing Guidelines Manual § 4B1.1(a) (Nov. 2018); 18 U.S.C. § 924(e)(1).

A hypothetical illustrates this point. Suppose a trial court erroneously instructs a jury that a state crime requires recklessness when the statute requires knowledge. If the jury finds the defendant guilty, he may challenge his conviction on direct appeal or seek state collateral review. But the defendant may not raise the instructional issue when his crime resurfaces as a recidivist predicate in a

federal sentencing proceeding. The Supreme Court so held a decade ago when it explained that the "modified categorical approach" permits sentencing courts to consult jury instructions only "when a statute lists multiple, alternative elements." *Descamps*, 570 U.S. at 261–64. Any consideration of the jury instructions outside those narrow parameters shifts the focus from permissible examination of "the law," *Brown*, 144 S. Ct. at 1204, to forbidden exploration of "the particular facts" underlying a defendant's conviction, *Taylor*, 495 U.S. at 600. The same problem surfaces when federal sentencing courts consult interpretive decisions that were never "the law" because they misinterpreted a statute from the outset. *See Rivers*, 511 U.S. at 312–13 & n.12.

To be sure, some states oddly reject the notion that judicial constructions of a statute establish what the statute always meant. Florida appears to be one such state. *See State v. Barnum*, 921 So. 2d 513, 524 (Fla. 2005) (explaining that "the reversal of a district court interpretation of a statute . . . necessarily changes the law as it existed at the time of a defendant's conviction"). So there are at least some cases where a defendant convicted of a Florida offense might be able to establish that the law applicable to his conviction differed from the law as the Supreme Court of Florida later explained it.

The Seventh Circuit has faulted us for "not address[ing]" this nuance in *Somers*. *See Anderson*, 99 F.4th at 1112. But we did not need to do so. The certification opinion we invoked in *Somers* "ma[de] clear" that the Supreme Court of Florida knew we "sought its guidance on the elements of Florida's aggravated assault statute

21-13391          WILLIAM PRYOR, C.J., Concurring          5

because the Government sought to enhance . . . Somers's sentence on the basis of such a conviction." *Id.* at 1114 (Ripple, J., dissenting). The Supreme Court of Florida "therefore understood that [we] needed to know the scope of the Florida aggravated assault statute at the time . . . Somers was convicted of the predicate offense." *Id.* And it told us the answer to that question "unambiguously." *Somers*, 66 F.4th at 896. We gave its ruling the appropriate level of respect when we followed the "definitive[] answer[]" we received. *Mathis*, 579 U.S. at 517.

We should give similar respect to controlling state precedents in future sentencing appeals. Doing so will often require us to apply precedents that postdate a defendant's conviction. Nothing in federal law counsels otherwise.

21-13391            ABUDU, J., Concurring            1

ABUDU, Circuit Judge, Concurring:

Because the governing Florida district court of appeal where Pinkston was convicted of aggravated assault required a specific intent *mens rea* at the time he was convicted, the district court's sentencing enhancement was proper. I write separately to express concern with allowing a defendant's prior conviction to be upgraded to a qualifying crime of violence based on subsequent and contrary judicial decisions.

The Supreme Court has held that qualifying crimes of violence must have a *mens rea* of at least knowledge; mere recklessness is insufficient.[1] *Borden v. United States*, 593 U.S. 420, 429 (2021). Moreover, the prior conviction must have qualified as a crime of violence at the time the defendant committed it. *McNeill v. United States*, 563 U.S. 816, 821–22 (2011) ("[W]hen determining whether a defendant was convicted of a 'violent felony,' we have turned to the version of state law that the defendant was actually convicted of violating."). That is because courts assess the application of recidivist sentencing schemes by performing a backward-looking inquiry at the time of federal sentencing. *Id.*; *Brown v. United States*, 602 U.S. 101, 111–12 (2024). They do so because recidivist enhancements concern a defendant's culpability at the time of the offense,

---

[1] Although *Borden* concerned "violent crimes" in the context of the Armed Career Criminal Act ("ACCA"), we consistently have interpreted the meaning of a "violent crime" to be the same as a "crime of violence" under the Career Offender Enhancement. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

not future developments in the law. *See Brown*, 602 U.S. at 115 (discussing and quoting *McNeill*, 563 U.S. at 822, as rejecting an alternative conclusion as "absurd"). Our sister circuits agree that a defendant's culpability turns on the law at the time the defendant was convicted. *See United States v. Cornette*, 932 F.3d 204, 214 (4th Cir. 2019) (explaining "we must defer to the interpretation of the statute employed by Georgia courts at the time of [the defendant]'s conviction"); *United States v. Vickers*, 967 F.3d 480, 486 (5th Cir. 2020) ("We consider only the state law as it existed at the time of [the defendant]'s 1982 murder conviction."), *vacated and remanded on other grounds*, 141 S. Ct. 2783 (2021) (mem.); *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1127 (8th Cir. 2013) ("[W]e cannot conclude [the defendant]'s Nebraska manslaughter conviction, as interpreted by the Nebraska Supreme Court at the time, equates to the generic federal crime of manslaughter."); *United States v. Anderson* 99 F.4th 1106, 1111 (7th Cir. 2024) ("As an initial matter, [the defendant] is correct that we look to the law at the time of the offense to determine whether a crime is a violent felony.").

The potential consequences of not doing so provide a valid reason for this approach which the Supreme Court and our sister circuits have adopted. For example, in Florida, the decisions of the district courts of appeals are binding when the Florida Supreme Court has not issued a ruling on an issue. *Pardo v. State*, 596 So. 2d 665, 667 (Fla. 1992) ("[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it."). If a defendant was convicted of aggravated assault based on a theory of recklessness in a district that required

only reckless conduct, the state would not have been required to prove knowledge, and any defense based on lack of knowledge would have been foreclosed. *See id.* Nor could he have successfully challenged the jury instructions that informed the jury that recklessness was all the state needed to prove. *See id.* Under those circumstances, the defendant's conviction would not have been sufficient to qualify as a predicate offense under *Borden* because culpability was based on a showing of recklessness. 593 U.S. at 429. Despite not exhibiting the behavior that the recidivist provisions targeted (knowing conduct), his crime could later be deemed a qualifying crime of violence, even though he never met the requisite standard; he would "face[] a punishment that the law c[ould] not impose upon him" at the time of his conviction. *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).

We should, therefore, give further consideration to an approach which is consistent with our sister circuits, assessing whether a defendant committed a qualifying crime of violence by looking to the law at the time of his conviction instead of asking whether, in light of new decisional law, the offense now qualifies as a crime of violence and should be retroactively applied to enhance his sentence. Such an outcome perhaps presents serious due process and equal protection concerns.